J-E02003-22

2023 PA Super 103

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN R. AUMICK | : | |
| | : | |
| Appellant | : | No. 1529 EDA 2020 |

Appeal from the Judgment of Sentence Entered July 13, 2020
In the Court of Common Pleas of Pike County
Criminal Division at No(s): CP-52-CR-0000184-2019

BEFORE: PANELLA, P.J., OLSON, J., DUBOW, J., KUNSELMAN, J., NICHOLS, J., MURRAY, J., McLAUGHLIN, J., McCAFFERY, J., and SULLIVAN, J.

OPINION BY SULLIVAN, J.:                    **FILED JUNE 12, 2023**

John R. Aumick ("Aumick") appeals from the judgment of sentence imposed following the entry of his negotiated guilty plea to corruption of minors.[1] Specifically, Aumick challenges the trial court's determination that he is a sexually violent predator ("SVP") subject to lifetime registration requirements pursuant to the Sex Offender Registration and Notification Act ("SORNA II"), 42 Pa.C.S.A. § 9799.10 *et seq*. We affirm.

The relevant factual and procedural history of this matter is as follows. In November 2017, Ashley Whitten discovered that her stepfather, Aumick, had repeatedly sexually abused her daughter, P.M. One month later, Molly Carson, a forensic interviewer for child abuse cases, conducted a videotaped

---

[1] *See* 18 Pa.C.S.A. § 6301(a)(1)(ii).

forensic interview of P.M. at a child advocacy center. During the interview, P.M., then fourteen years old, stated that Aumick had raped her when she was six years old, causing her to experience soreness and resulting in blood on her underwear. P.M. also stated that, a few weeks later, Aumick began touching her vagina and then digitally penetrated her vagina with his finger. P.M. explained that she asked Aumick to stop, but he refused to do so. P.M. told the interviewer that Aumick did this to her on multiple occasions, but she stopped him before he penetrated her on subsequent occasions. P.M. further described several more instances of sexual abuse by her step-grandfather, including exposing his penis to her, making sexually inappropriate comments, watching her when she went to the bathroom, and on multiple occasions, grabbing and touching her buttocks. P.M. indicated that Aumick stopped touching her when she was eight or nine years old.

Police charged Aumick with seventeen sexual offenses, including, *inter alia*, rape of a child, statutory sexual assault, aggravated indecent assault, sexual assault, and corruption of minors. A preliminary hearing was conducted on March 19, 2019, at which the Commonwealth presented the testimony of Ms. Carson, who authenticated the video recording of the forensic interview of P.M. regarding her sexual abuse by Aumick. In addition to the video, the Commonwealth presented the testimony of Chief Detective Michael Jones, who explained that the sexual abuse occurred at two locations within Pike County. The detective stated that he interviewed Aumick and that, during

the interview, Aumick told him that he had sexual intercourse with his stepdaughter, Ms. Whitten, and that she performed oral sex on him.[2]  At the conclusion of the preliminary hearing, the magistrate court held all charges over for trial.

On January 18, 2020, following written and oral plea colloquies, Aumick entered a negotiated guilty plea to corruption of minors, a felony of the third degree and a Tier I offense which required him to be evaluated by the Sexual Offender Assessment Board ("SOAB") for classification as an SVP.  **See** 42 Pa.C.S.A. § 9799.24(a) (providing that "a court shall order an individual convicted of a sexually violent offense to be assessed by the board"); **see also id**. § 9799.14 (classifying corruption of minors as a Tier I sexual offense). In his written plea colloquy, Aumick agreed that "[b]etween June 2009 through December 2015, [he] engaged in a course of corruption against his grandchild, P.M., ([born in 2003]), which included sexual touching of her private areas.  This occurred at two residences in Pike County, Lehman Township, Pennsylvania."  Written Plea Colloquy, 1/8/20, at 4; **see also** N.T., 1/8/20, at 4-5 (wherein Aumick confirmed at the plea hearing that the factual

---

[2] Ms. Whitten confirmed that she performed oral sex on Aumick in April 2017, but also told investigators that Aumick had sexually assaulted her when she was growing up.

basis for his guilty plea was accurately set forth in the written plea colloquy).[3]
Pursuant to the negotiated plea agreement, the Commonwealth dismissed the remaining sixteen charges against Aumick. The trial court then ordered a presentence investigation report and scheduled the matter for a sentencing hearing. The court also ordered a SOAB assessment in accordance with section 9799.24(a).

Prior to the hearing, a SOAB investigator conducted an investigation regarding Aumick and prepared a report. Based on the SOAB investigator's report and case-related documents, Mary Muscari, Ph.D., a SOAB member, conducted an assessment of Aumick. Dr. Muscari determined that Aumick should be classified as an SVP and prepared a report regarding her conclusion. Based on Dr. Muscari's assessment, the Commonwealth requested that the trial court conduct a hearing to determine whether Aumick should be classified as an SVP. *See* 42 Pa.C.S.A. § 9799.24(e)(1).

On July 13, 2020, the trial court conducted a hearing to determine whether Aumick should be classified as an SVP and to impose sentence. At

_____

[3] Inexplicably, Aumick insists throughout his appellate brief that he only admitted to touching P.M.'s buttocks. *See* Aumick's Brief at 9, 11, 13, 16, and 20. However, this is simply not true. Aumick was accused of sexually touching both P.M.'s vagina and buttocks on multiple occasions, and he admitted in his written plea colloquy to "***sexual touching of her private areas***" at two different residences. Written Plea Colloquy, 1/8/20, at 4 (emphasis added). We consider the "private areas" of a female to include both the vagina and buttocks. Thus, we reject Aumick's attempts to minimize the conduct to which he admitted in connection with his guilty plea.

the hearing, the Commonwealth presented the expert testimony and report of Dr. Muscari, who was qualified by the trial court as an expert in the field of sexual offender assessment without objection. *See* N.T., 7/13/20. at 6. Dr. Muscari testified that she did not conduct an in-person interview with Aumick; however, she explained that a majority of SVP assessments are completed without an interview. *Id*. at 8. Dr. Muscari noted that she has completed between 600 and 700 SVP assessments for SOAB over the past fifteen years. *Id*. at 5. She further explained that, in conducting such assessments, she reviews the materials provided through the courts, including police reports, child protective reports, and testimony. *Id*. at 7. Dr. Muscari indicated that, in assessing Aumick, she reviewed, *inter alia*, the affidavit of probable cause, criminal information, criminal complaint, preliminary hearing transcript, and investigative reports prepared by Child Protective Services. *Id*. at 9; *see also* Exhibit 1, 2/28/20, at 1. Dr. Muscari explained that she assessed Aumick based on the statutory factors and concluded to a reasonable degree of professional certainty that Aumick should be classified as an SVP. *Id*. at 9, 18. Dr. Muscari referenced Aumick's antisocial behavior, as reflected in his prior criminal history, which includes convictions for homicide by vehicle and burglary. *Id*. at 11. Dr. Muscari discussed her opinion that Aumick suffers from a pedophilic disorder. *Id*. at 12-15. Dr. Muscari further opined that Aumick's sexual offense was the result of a mental defect or personality disorder which made him more likely to reoffend. *Id*. at 15-17. Dr. Muscari

additionally noted the particular vulnerability of the victim, her relationship to Aumick, and the repeated nature of the sexual abuse. *Id*. Dr. Muscari explained that, even though Aumick has experienced incarceration, Aumick's "condition overrode his emotional, volitional control so he could not control his impulses to sexually abuse [P.M.]" despite her considerable protestations. *Id*. at 16. Dr. Muscari opined that "Aumick is following a sexually deviant pattern and he acted upon it by committing the index offense." *Id*. Dr. Muscari's assessment and report were entered into evidence without objection. *Id*. at 18.[4]

_____

[4] The learned dissent insists that Dr. Muscari's assessment was based **solely** on the allegations to which Aumick did **not** plead guilty. **See** Dissenting Opinion, at 6. However, this assertion is belied by the record. At the SVP hearing, Dr. Muscari answered in the affirmative when she was asked, "did you evaluate any factors with regard to the current offense for which [Aumick] has been convicted by his Plea?" N.T., 7/13/20, at 9; **see also id**. at 20, 21 (wherein Dr. Muscari repeatedly agreed that Aumick pleaded guilty to corruption of minors based on his repeatedly touching P.M. in a sexually inappropriate manner). Moreover, in her opinion, Dr. Muscari indicated that she had reviewed the affidavit of probable cause which detailed, *inter alia*, P.M.'s accusations that Aumick "started touching her vagina with his fingers . . . [and] had done this multiple times to her . . .." Exhibit 1, 2/28/20, at 2. Dr. Muscari further indicated in her expert report that, pursuant to the affidavit, P.M. stated that Aumick "would grab and touch her butt, [and that] this took place multiple times." **Id**. In making her SVP assessment, Dr. Muscari specifically indicated that her opinion was based on "[h]er having reviewed all of the **records** available, having considered all of the factors specified under Pennsylvania law, and having considered the current and credible sex offender research . . .." **Id**. at 9 (emphasis added). Thus, it is clear that Dr. Muscari's assessment included her consideration of the accusations to which Aumick confessed (*i.e.*, sexually touching P.M.'s private areas on multiple occasions).

Aumick's counsel cross-examined Dr. Muscari regarding her assessment. In particular, defense counsel questioned Dr. Muscari regarding her consideration of all of P.M.'s allegations of sexual abuse rather than the limited factual basis for Aumick's plea of guilt for corruption of minors. Aumick presented no evidence at the hearing. At the conclusion of the SVP hearing, the trial court determined that the Commonwealth had met its burden of proving by clear and convincing evidence that Aumick should be classified as an SVP subject to lifetime reporting requirements under SORNA II. *Id*. at 31, 34.

The trial court then conducted a sentencing hearing at which P.M. testified regarding the trauma she has suffered due to Aumick's sexual abuse, resulting in her suicide attempts. At the conclusion of the sentencing hearing, the trial court imposed a sentence of eighteen months to five years in prison for corruption of minors. Aumick filed a post-sentence motion for reconsideration which the trial court denied. Aumick then filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Aumick raises the following issues for our review:

A. WHETHER THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING THAT AUMICK WAS [AN SVP] BASED ON ALLEGED INCIDENTS TO WHICH HE DID NOT PLEAD GUILTY NOR OF WHICH HE WAS CONVICTED.

B. WHETHER THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING THAT AUMICK WAS [AN SVP] BASED ENTIRELY ON HEARSAY IN THE FORM OF THE STATEMENTS OF THE ALLEGED VICTIM WHO NEVER TESTIFIED AT ANY PROCEEDING.

Aumick's Brief at 7 (capitalization in original).[5]

In both of his issues, Aumick challenges his SVP designation. A challenge to a trial court's SVP designation presents a challenge to the sufficiency of the evidence for which our standard of review is *de novo* and our scope of review is plenary. ***See Commonwealth v. Meals***, 912 A.2d 213, 218 (Pa. 2006).[6] A challenge to the sufficiency of the evidence to support an SVP designation requires the reviewing court to accept the undiminished record of the case in the light most favorable to the Commonwealth. ***Id***. The reviewing court must examine all of the Commonwealth's evidence without consideration of its admissibility. ***See Commonwealth v. Baker***, 24 A.3d

---

[5] Aumick's issues, as presented in his statement of questions involved, purport to raise claims of trial court error or abuse of discretion. However, in the discussion section of his brief, Aumick does not explain how the trial court erred or abused its discretion. Instead, Aumick focuses entirely on the basis for Dr. Muscari's opinion. Specifically, he challenges the information that Dr. Muscari was permitted to consider when conducting her assessment as to whether Aumick should be classified as an SVP. As explained above, the trial court's inquiry at an SVP hearing is different from the SOAB's assessment. Thus, a claim of trial court error or abuse of discretion involves an entirely different inquiry than a challenge to a SOAB assessment. Pursuant to our Rules of Appellate Procedure, "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"). Aumick did not raise any issue in the statement of questions involved specifically relating to Dr. Muscari's assessment. While we could find waiver of both of Aumick's issues on this basis, we decline to do so.

[6] Although the ***Meals*** Court addressed a prior version of the SVP statute, ***see*** 42 Pa.C.S.A. § 9795.4 (repealed), it remains instructive in our review of a trial court's SVP determination under present law. ***See***, ***e.g.***, ***Commonwealth v. Woeber***, 174 A.3d 1096, 1105-06 (Pa. Super. 2017) (relying on ***Meals*** for the applicable scope and standard of review of an SVP designation).

1006, 1035 (Pa. Super. 2011). A successful sufficiency challenge can lead to an outright grant of relief such as a reversal of the SVP designation, whereas a challenge to the admissibility of the expert's opinion and testimony is an evidentiary question which, if successful, can lead to a new SVP hearing. *Commonwealth v. Sanford*, 863 A.2d 428, 431 (Pa. 2004) (distinguishing concepts of sufficiency of evidence versus admissibility of evidence, but refusing to render any opinion on whether SVP expert's "reliance on the affidavit of probable cause and the charging documents somehow rendered her testimony inadmissible[,] as this issue is not before this court"). "We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied." *Baker,* 24 A.3d at 1033.

The procedure for determining SVP status is statutorily mandated and well-defined. *See Commonwealth v. Dixon*, 907 A.2d 533, 535 (Pa. Super. 2006). Under revised Subchapter H of SORNA,[7] after a person has been

_____

[7] SORNA has been amended several times. SORNA I was originally enacted on December 20, 2011, effective December 20, 2012, *see* Act of December 20, 2011, P.L. 446, No. 111, § 12, effective in one year or December 20, 2012 (Act 11 of 2011). Act 11 was amended on July 5, 2012, also effective December 20, 2012, *see* Act of July 5, 2012, P.L. 880, No. 91, effective December 20, 2012 (Act 91 of 2012), and amended on February 21, 2018, effective immediately, known as Act 10 of 2018, *see* Act of February 21, 2018, P.L. 27, No. 10, §§ 1-20, effective February 21, 2018 ("Act 10" of 2018), and, lastly, reenacted and amended on June 12, 2018, P.L. 140, No. 29, §§ 1-23, effective June 12, 2018 ("Act 29" of 2018). Through Act 10, as amended in Act 29 (collectively, SORNA II), the General Assembly split SORNA I's former
*(Footnote Continued Next Page)*

convicted of an offense listed in section 9799.14, the trial court orders an assessment by the SOAB. *See* 42 Pa.C.S.A. § 9799.24(a). The SOAB must assess all individuals convicted of sexually violent offenses to determine whether they should be classified as an SVP. *See id*. § 9799.24(b). When assessing whether a particular offender should be classified as an SVP, "the board shall establish standards for evaluations and for evaluators conducting the assessments." *Id*.

A SOAB board member conducts the assessment to determine if the individual should be classified as an SVP. *See id*. To aid this function, "[a]ll State, county and local agencies, offices and entities in this

_____

Subchapter H into a revised Subchapter H and Subchapter I. Subchapter I applies to sexual offenders who committed an offense on or after April 22, 1996 but before December 20, 2012, whose period of registration has not expired, or whose registration requirements under a former sexual offender registration law have not expired. *See* 42 Pa.C.S.A. §§ 9799.51-9799.75. Revised Subchapter H applies to offenders who committed an offense on or after December 20, 2012 (the date SORNA I became effective). *See* 42 Pa.C.S.A. §§ 9799.10-9799.42. Both revised Subchapter H and Subchapter I require an individual who has been designated as an SVP to register for life. *See* 42 Pa.C.S.A. §§ 9799.15(d), 9799.55(b)(3). In the instant matter, P.M. indicated that Aumick sexually abused her from the time she was six years old until she was eight or nine years old. As P.M. was born in 2003, her allegations suggest that the sexual offenses in question were committed between 2009 and 2012, thereby implicating Subchapter I. However, as explained above, Aumick pleaded guilty to sexual offenses committed "[b]etween June 2009 through December 2015 . . .." Written Plea Colloquy, 1/8/20, at 4. Thus, Aumick was convicted of offenses committed both before and after December 20, 2012, thus straddling the boundary between revised Subchapter H and Subchapter I. Nonetheless, the trial court classified Aumick as an SVP under revised Subchapter H, which contains more stringent reporting requirements than Subchapter I. As Aumick has not challenged that classification, we need not address it.

Commonwealth . . . shall cooperate by providing copies of records and information as requested by the board in connection with the court-ordered assessment." *Id*. § 9799.24(c).

An assessment shall include, but not be limited to, an examination of the following:

(1)　Facts of the current offense, including:

(i)　Whether the offense involved multiple victims.

(ii)　Whether the individual exceeded the means necessary to achieve the offense.

(iii)　The nature of the sexual contact with the victim.

(iv)　Relationship of the individual to the victim.

(v)　Age of the victim.

(vi)　Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii)　The mental capacity of the victim.

(2)　Prior offense history, including:

(i)　The individual's prior criminal record.

(ii)　Whether the individual completed any prior sentences.

(iii)　Whether the individual participated in available programs for sexual offenders.

(3)　Characteristics of the individual, including:

(i)　Age of the individual.

(ii)　Use of illegal drugs by the individual.

      (iii) A mental illness, mental disability or mental abnormality.

      (iv) Behavioral characteristics that contribute to the individual's conduct.

    (4)    Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

*Id*. § 9799.24(b)(1)-(4). After completing its assessment, the SOAB member must prepare and submit a written report to the district attorney, who may file a praecipe for a hearing on the matter. *See id*. § 9799.24(d), (e)(1).

A SOAB expert opinion falls within the general rules regarding expert witnesses. *See Commonwealth v. Prendes*, 97 A.3d 337, 360 (Pa. Super 2014), *overruled sub silentio on other grounds by* **Commonwealth v. Hvizda**, 116 A.3d 1103, 1106 (Pa. 2015). In this regard, Pa.R.E. 702 provides:

    A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

    **(a)** the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

    **(b)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

    **(c)** the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

Rule 703 identifies the facts and data upon which an expert may base his or her opinion:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Pa.R.E. 703.

Further, "[i]f the expert states an opinion the expert must state the facts or data on which the opinion is based." Pa.R.E. 705; *see also id*. Cmt. (explaining that otherwise inadmissible facts and data supporting an expert opinion are considered only to explain basis for expert's opinion, not as substantive evidence).

The trial court's inquiry at an SVP hearing is different from the SOAB's assessment. Whereas the SOAB member must consider the fifteen factors listed in section 9799.24(b), the trial court must determine whether the Commonwealth has proven by clear and convincing evidence that the defendant is an individual who has "a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9799.12 (providing the definition of a "sexually violent predator"); *see also Commonwealth v. Butler*, 226 A.3d 972, 992 (Pa. 2020) (stating, an SVP, in addition to having been convicted of a sexually violent offense, is a person "who [has] been individually determined

to suffer from a mental abnormality or personality disorder such that they are highly likely to continue to commit sexually violent offenses").

"An SVP assessment is not a trial or a separate criminal proceeding that subjects the defendant to additional punishment." *Prendes*, 97 A.3d at 358 (*citing Commonwealth v. Howe*, 842 A.2d 436, 445-46 (Pa. Super. 2004)). "SVP status, therefore, does not require proof beyond a reasonable doubt; [rather,] the court decides SVP status upon a show of clear and convincing evidence that the offender is, in fact, an SVP." *Id*. (*citing Commonwealth v. Killinger*, 888 A.2d 592, 600 (Pa. 2005)).

In both of his issues, Aumick challenges Dr. Muscari's opinion to the extent that she was permitted to consider allegations made by P.M. to which he did not plead guilty when assessing whether he met the criteria to be classified as an SVP. As these issues are interrelated, we will address them together.

In his first issue, Aumick argues that his guilty plea was limited to the offense of corruption of minors and further limited by his admission to sexual touching of P.M.'s private areas.[8] Aumick takes issue with the fact that Dr.

_____

[8] As explained previously, Aumick attempts to minimize the extent of the conduct to which he admitted in connection with his guilty plea by repeatedly insisting that he merely admitted to sexually touching P.M.'s buttocks. **See** Aumick's Brief at 9, 11, 13, 16, and 20. Our review of the record, however, reveals otherwise. Aumick agreed at his plea hearing that "[b]etween June 2009 through December 2015, [he] engaged in a course of corruption against his grandchild, P.M. . . . which included sexual touching of **her private**
*(Footnote Continued Next Page)*

- 14 -

Muscari based her assessment on the allegations contained in the police report, including P.M.'s claims that Aumick penetrated her vagina with his penis, digitally penetrated her vagina, touched her vagina on several occasions, exposed his penis to her, watched her when she went to the bathroom, grabbed and touched her buttocks on multiple occasions, and made sexual comments to her. Aumick contends that, because he did not confess or plead guilty to any conduct other than touching P.M.'s private area, Dr. Muscari's conclusion that Aumick suffers from pedophilic disorder is based on unproven and unadmitted accusations. Aumick points out that his criminal record contains no other arrests or convictions for sexual offenses. Aumick asserts that "it in [sic] entirely inappropriate for an individual to be held liable in a court of law during a sentencing proceeding based on a series of facts to which he did not plead." Aumick's Brief at 16. Although Aumick concedes that he was aware of and accepted that SORNA registration was a consequence of his plea, he nevertheless contends that SORNA registration must be based on the offenses committed, not the victim's allegations.

_____

*areas*." *See* Written Plea Colloquy, 1/8/20, at 4 (emphasis added). Notably, P.M. accused Aumick of touching her vagina on multiple occasions and grabbing and touching her buttocks on multiple occasions. *See* Exhibit 1, 2/28/20, at 2. Thus, contrary to Aumick's assertions otherwise, his plea was not limited to merely sexually touching P.M.'s buttocks on multiple occasions and can be considered to also include his sexual touching of P.M.'s vagina on multiple occasions.

In his second issue, Aumick challenges Dr. Muscari's opinion to the extent that she did not examine P.M., and instead relied on information provided by the Commonwealth. Aumick argues that "Dr. Muscari based her opinion entirely on material outside of the facts of the case by reviewing unproven and untested accusations to which no admission had been made." Aumick's Brief at 18. Aumick claims that because P.M. never testified in this case, her accusations against him were never tried or tested in any appropriate forum and constitute hearsay.[9] Aumick argues that Ms. Whitten had cause to be biased against him and has strong influence and control over P.M. Aumick contends that Dr. Muscari based her opinion on allegations of actual sexual conduct over a period of years which he denied. According to

_____

[9] Hearsay is defined as a statement that:

    (1)    the declarant does not make while testifying at the current trial or hearing; and

    (2)    a party offers in evidence to prove the truth of the matter asserted in the statement.

Pa.R.E. 801(c). Although Aumick did not specifically use the word "hearsay" in his post-sentence motion, he did challenge Dr. Muscari's reliance on "allegations of sexual contact beyond what [Aumick] confessed to and what he was sentenced for, and that "[t]he opinion of the SOAB expert was therefore based entirely on untried allegations to which [Aumick] never admitted." Motion to Reconsider Sentence, 7/21/20, at 1-2. Thus, as all of the documentation relied on by Dr. Muscari included hearsay statements, we deem his hearsay objection to be preserved.

Aumick, Dr. Muscari's opinion and conclusions were based on unknowable and unprovable materials.[10]

Initially, we observe that the offense of corruption of minors to which Aumick pleaded guilty is, without more, sufficient to trigger an SVP assessment and provide a basis to support an SVP classification where the Commonwealth's evidence, including the SOAB assessment, demonstrates that the person convicted of a sexually violent offense has a mental abnormality or disorder rendering that person more likely to engage in predatory sexually violent offenses. *See Commonwealth v. Feucht*, 955 A.2d 377, 381 (Pa. Super. 2008); *see also* 42 Pa.C.S.A. § 9799.24(a) (providing that "a court shall order an individual convicted of a sexually violent

---

[10] In the argument section of his brief, Aumick attempts to raise additional issues for our review; namely, that Dr. Muscari's consideration of P.M.'s unproven allegations constitutes a breach of his plea agreement as well as a violation of the confrontation clause. However, these claims were not raised in Aumick's statement of questions presented. *See* Pa.R.A.P. 2116 (providing that "[n]o question will be considered unless it is stated in the statement of questions presented or is fairly suggested thereby"). Moreover, Aumick did not raise these issues in either his post-sentence motion or in his Rule 1925(b) concise statement. *See* Pa.R.A.P. 302(a) (providing that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal"); *see also* Pa.R.A.P. 1925(b)(4)(vii) (providing that issues not raised in the concise statement are waived). Although Aumick raised a hearsay violation, the concepts of hearsay and confrontation clause violations are distinguishable. *See Commonwealth v. Chmiel*, 738 A.2d 406, 420 (Pa. 1999). Therefore, as Aumick failed to preserve these additional issues for our review, we decline to address them.

offense to be assessed by the board"); **id**. § 9799.14 (classifying corruption of minors as a Tier I sexual offense).

Moreover, to the extent that Dr. Muscari considered P.M.'s other accusations and information contained in documents provided by the Commonwealth[11] in making her assessment, this Court has previously determined that she was permitted to do so. In **Prendes**, we addressed a similar challenge where the appellant argued that the record did not support his SVP classification because the trial court's SVP determination was based on a SOAB member's expert testimony that was founded on hearsay and unproven allegations contained in police reports, the affidavit of probable cause, polygraph examination reports, and other documents of record. The **Prendes** Court ruled that, in making her SVP assessment, the SOAB member was permitted to consider those documents because she testified that such records are typically relied on in SOAB evaluations. **See Prendes**, 97 A.3d at 362; **see also** Pa.R.E. 703, 705. The **Prendes** Court explained:

> The statute governing the SVP assessment does not limit the expert's consideration of information only to that admitted at trial or at the guilty plea proceedings. In fact, the statute **requires** state, county, and local agencies, offices or entities to provide copies of records and information as requested by the SOAB in connection with an SVP assessment, without limitation

---

[11] In her expert report, Dr. Muscari indicated that she reviewed the following documents: the SOAB investigator's report; the trial court order for an SVP assessment; the criminal information; the criminal complaint; the affidavit of probable cause; the District Attorney's CID; the preliminary hearing transcript; the bail report; and the Child Protective Services reports. **See** Exhibit 1, 2/28/20, at 1.

on the "admissibility" of that information. ***See*** 42 Pa.C.S.A. § 9799.24(c). As a result, it stands to reason that some if not many of the facts necessary to perform the SVP assessment might not have been proven beyond a reasonable doubt. Thus, we hold an SOAB expert opinion falls within the general rules regarding expert witnesses. As such, a SOAB expert's opinion may be based on facts or data that the expert has been made aware of or personally observed so long as experts in the particular field reasonably rely on those kinds of facts or data in forming an opinion on the subject; the facts or data consulted need not be admissible for the expert's opinion to be admitted. ***See*** Pa.R.E. 702, 703 . . . The SOAB expert must state the facts or data on which the opinion is based. ***See*** Pa.R.E. 705 and Comment (explaining otherwise inadmissible facts and data supporting expert opinion are considered only to explain the basis for an expert's opinion, not as substantive evidence). Then, the rules of evidence place the full burden of exploration of facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination. . . . Opposing counsel bears the burden of exposing and exploring any weaknesses in the underpinnings of the expert's opinion.

***Id***. at 360-61 (some citations omitted, emphasis added).[12]

Based on the reasoning expressed in ***Prendes***, we conclude that Dr. Muscari was permitted to consider the affidavit of probable cause, criminal information, criminal complaint, preliminary hearing transcript, and the investigative reports prepared by Child Protective Services when assessing Aumick. ***See Prendes***, 97 A.3d at 360-61; ***see also*** 42 Pa.C.S.A. § 9799.24(c); Pa.R.E. 702, 703, 705. Pursuant to revised Subchapter H, the SOAB ***must*** undertake a comprehensive assessment of a defendant convicted

_____

[12] Aumick concedes that, pursuant to ***Prendes***, "an expert's decision can be based on otherwise inadmissible materials in a SORNA assessment." Aumick's Brief at 18.

of a sexually violent offense by considering the fifteen factors set forth in section 9799.24(b)(1)-(4). ***See id***. § 9799.24(b)(1)-(4). Section 9799.24(c) expressly requires that "[a]ll State, county and local agencies, offices and entities in this Commonwealth, including juvenile probation officers, ***shall cooperate by providing copies of records and information as requested by the board in connection with the court-ordered assessment*** . . .." 42 Pa.C.S.A. § 9799.24(c) (emphasis added). Moreover, within ninety days of a defendant's qualifying conviction, the SOAB ***must*** prepare a written report regarding its assessment which includes, at a minimum, the following information: (1) a concise narrative of the individual's conduct; (2) whether the victim was a minor; (3) the manner of weapon or physical force used or threatened; (4) if the offense involved unauthorized entry into a room or vehicle occupied by the victim; (5) if the offense was part of a course or pattern of conduct involving multiple incidents or victims; and (6) previous instances in which the individual was determined guilty of an offense subject to this subchapter or of a crime of violence as defined in section 9714(g) (relating to sentences for second and subsequent offenses). ***Id***. § 9799.24(d), (d.1).

Given these statutory mandates, it is clear that the legislature intended that the SOAB member consider more than the limited facts included in a plea colloquy, and that the SOAB member undertake to review and consider the information contained in records provided by state, county and local agencies,

offices and entities in this Commonwealth when making an SVP assessment and preparing a statutorily compliant written report. To be sure, it would be the rare occasion on which the SOAB member would be able to fulfill its statutory obligations if its SVP assessments and written reports were limited to facts contained in a plea colloquy, admitted into evidence, or determined by the trier of fact.[13]

Moreover, in the context of an SVP hearing, the judge is not tasked with evaluating the veracity of the facts underlying the expert's testimony. **See Prendes**, 97 A.3d 360 (explaining that an SVP hearing is not a trial and the primary purpose of the SVP registration requirements is to protect the public, not to punish the offender). Indeed, the facts presented at an SVP hearing are not being offered for the truth of the matter asserted, as would be the case in a true hearsay scenario. Instead, they constitute information, gleaned from records which are reasonably relied on in SOAB evaluations, that is presented to the trial court solely to supply the basis for the expert's opinion in accordance with our Rules of Evidence. **See Prendes**, 97 A.3d at 362; **see**

_____

[13] Despite established jurisprudence on this point, the learned dissent conflates an SVP hearing with a preliminary hearing with respect to the consideration of hearsay evidence. **See** Dissenting Opinion, at 9 n.2 (relying on **Commonwealth v. McClelland**, 233 A.3d 717, 736 (Pa. 2020) (holding that a defendant's due process rights are violated at a **preliminary hearing** when charges are held over based solely on hearsay)). As explained above, an SVP assessment is not a trial or a separate criminal proceeding that subjects the defendant to additional punishment. **Prendes**, 97 A.3d at 358; **see also Killinger**, 888 A.2d at 600.

*also* Pa.R.E. 703, 705. Accordingly, the otherwise inadmissible facts reasonably relied upon by Dr. Muscari to explain the basis of her opinion, including the allegations of sexual abuse asserted by P.M., do not constitute substantive evidence. **See Prendes**, 97 A.3d at 361; **see also** Pa.R.E. 703, 705 and Cmt.

On the other hand, an expert's opinion which is rendered to a reasonable degree of professional certainty is, itself, substantive evidence. **See Commonwealth v. Fuentes**, 991 A.2d 935, 944-45 (Pa. Super. 2010) *(en banc)* (concluding that, because the expert's report and testimony supported the trial court's finding that appellant was an SVP, there was no basis for granting sufficiency relief). Thus, in this case, Dr. Muscari's opinion that Aumick is an SVP, which was rendered to a reasonable degree of professional certainty based on the materials she had reviewed, constituted sufficient evidence for the trial court to make its SVP determination.[14]

Aumick had the opportunity to defend himself against Dr. Muscari's opinion by presenting his own defense expert at the SVP hearing and by cross-examining Dr. Muscari to test the reliability and credibility of her opinion.

---

[14] To the extent that Aumick attempts to challenge the admissibility of Dr. Muscari's expert report, that challenge is waived, as he did not object to the admission of her expert report during the SVP hearing. **See Commonwealth v. Baker**, 24 A.3d 1006, 1034 (Pa. Super. 2011) (holding that "[h]aving failed to raise an objection before the trial court, Baker cannot now complain that the trial court erred in admitting the [SOAB member's expert report at the SVP hearing] . . ..").

Aumick did not retain a defense expert or present any evidence at the SVP hearing. Although defense counsel subjected Dr. Muscari to questioning regarding the materials she relied upon in making her assessment, such efforts went to the weight rather than the sufficiency of the Commonwealth's case. *See Feucht*, 955 A.2d at 382.[15] Accordingly, they do not affect our sufficiency analysis.

Viewing the record evidence in the light most favorable to the Commonwealth, we conclude that the record substantiates the trial court's determination that the Commonwealth presented clear and convincing evidence that Aumick met the statutory criteria to be classified as an SVP under revised Subchapter H of SORNA II. Dr. Muscari testified to a reasonable degree of professional certainty that Aumick suffers from a pedophilic disorder, is following a sexually deviant pattern, and is an individual who has a mental abnormality or personality disorder that makes him likely to engage in predatory sexually violent offenses. *See* N.T., 7/13/20, at 9, 12-18. Aumick essentially asks this Court to reweigh the evidence and find in his favor, which we cannot do. *See Fuentes*, 991 A.2d at 944-45 (holding that

_____

[15] Aumick failed to raise a challenge to the weight of the evidence in the lower court. Thus, he failed to preserve a weight challenge for our review. *See* Pa.R.Crim.P. 607 (providing that a challenge to the weight of the evidence must be preserved in a post-sentence motion, prior to sentencing orally, or through a written motion); *see also* Pa.R.A.P. 302(a) (providing that issues not raised in the lower court are waived and cannot be raised for the first time on appeal).

appellant's challenge to the information considered by the SOAB expert in making the SVP assessment went to the weight rather than the sufficiency of the evidence). Accordingly, we afford him no relief.

Judgment of sentence affirmed.

President Judge Panella, Judges Olson, Kunselman, Nichols, Murray, McLaughlin and McCaffery join this opinion.

Judge Dubow files a dissenting opinion.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/12/2023