J-S40041-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| EDWARD VINCENT BACON | : | |
| Appellant | : | No. 891 EDA 2024 |

Appeal from the Judgment of Sentence Entered February 16, 2024
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0001425-2023

BEFORE:    STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED MARCH 5, 2025**

Edward Vincent Bacon ("Bacon") appeals from the judgment of sentence imposed following his guilty pleas to three counts of possession of child sexual abuse material ("possession of child pornography") and one count of criminal use of a communication facility.[1]  We affirm.

On September 19, 2023, Bacon entered negotiated guilty pleas to the above offenses.  The Commonwealth later summarized the factual basis as follows:

> In February 2023, [Bucks County District Attorney's Office Detective Dante] Montella [obtained] a search warrant [for Bacon's home,] pursuant to an investigation [conducted] with police in Virginia[.   A]n undercover officer had been [communicating] with [Bacon] online regarding images of child pornography.

_____

[1] 18 Pa.C.S.A. §§ 6312(d), 7512(a).

Upon serving the search warrant and assisting Virginia with their case, [the detectives found Bacon] in possession of a cell phone, to which [Bacon] provided the passcode[. A] number of images of child pornography, including . . . two images of infants being sexually abused[,] were present on that cell phone. . . .

N.T., 9/19/23, at 28.

As we discuss *infra*, Bacon had prior convictions of possession of child pornography,[2] and he was already subject to a term of registration under Subchapter H of the Pennsylvania Sex Offender Registration and Notification Act[3] ("SORNA"). The instant possession of child pornography convictions triggered lifetime SORNA registration, as well as an assessment by the Sexual Offender Assessment Board ("SOAB") as to whether Bacon was a sexually violent predator ("SVP").[4]

---

[2] The Commonwealth explained that Bacon had two separate, prior possession of child pornography dockets, but because he was convicted of and sentenced on both dockets at the same time, it considered the instant convictions to be his second for SORNA purposes. *See* N.T., 2/16/24, at 18. The parties agreed that the Commonwealth would not seek the mandatory twenty-five year-sentence for a second offense, but it would add two counts of possession of child pornography, to the original one count, in order to "reach[] a slightly less lengthy term of incarceration [*sic*]." N.T., 9/19/23, at 2.

[3] 42 Pa.C.S.A. §§ 9799.10-9799.75.

[4] *See* 42 Pa.C.S.A. §§ 9799.14(b)(9) (classifying possession of child pornography as a "Tier I" sexual offense), (d)(16) (providing that two or more convictions of a Tier I sexual offense shall be classified as a Tier III offense), 9799.15(a)(3) (requiring an individual convicted of a Tier III sexual offense to register for life), 9799.24(a) (providing that after conviction of a sexually violent offense, a court shall order an individual to be assessed by the SOAB).

The trial court conducted a combined sentencing and SVP hearing on February 16, 2024. The court imposed the agreed-upon aggregate sentence of seventeen to thirty-seven years' imprisonment, with a consecutive term of three years' probation.

With respect to the SVP determination, the Commonwealth presented the assessment report prepared by Veronique Valliere, Psy.D. ("Dr. Valliere"), member of the SOAB. The parties stipulated that if Dr. Valliere were called to testify, she would testify consistently with her report. Thus, the Commonwealth did not call her to testify.

We now review Dr. Valliere's report in detail. Bacon did not submit to an interview. Dr. Valliere considered, *inter alia*, Bacon's prior criminal record and relevant history, which the parties do not dispute. First, in July 2014, when Bacon was twenty-one years old, he pleaded guilty to one count each of possession of child pornography, dissemination of child pornography, and criminal use of a communication facility.[5] Bacon underwent an SVP assessment by an SOAB member, who opined Bacon did **not** suffer from a mental abnormality and was **not** predatory. The trial court imposed a sentence of two to four years' imprisonment, with a consecutive four years' probation, and found he was **not** an SVP. **See** Sexually Violent Predator Evaluation ("SVP Evaluation"), 11/28/23, at 2.

---

[5] The Bucks County Court of Common Pleas trial docket was CP-09-CR-0002724-2014.

In August 2014, while the above charges were pending, police arrested Bacon again for possession of child pornography. Bacon pleaded guilty to twenty-five counts of possession of child pornography, five counts of dissemination of child pornography, and one count of criminal use of a communication facility.[6] Bacon underwent a second SVP assessment. The SOAB member opined that Bacon suffered from a mental abnormality — pedophilic disorder — but did not meet the criteria to be predatory. The trial court imposed a sentence of two to four years' imprisonment, to be followed by four years' probation, to run concurrently with the above sentence. The trial court also found Bacon was **not** an SVP. **See id**.

Additionally, Dr. Valliere considered that in 2009, both the Lehigh County and Northampton County Children and Youth agencies issued reports indicating sexual abuse by Bacon, then fifteen years old, against his seven year-old half-sister. Bacon showed her pornography and inappropriately touched her for almost a year. Bacon "was [also] investigated for abusing his half brother." **Id**. at 3. Bacon was not charged, however, for this conduct.

While incarcerated, Bacon admitted to sexually abusing multiple children, male and female, not related to him, who were aged eight to fourteen. "It is unclear if these victims [are the same] victims in the illegal imagery." **Id**. at 4.

_____

[6] The Bucks County Court of Common Pleas trial docket was CP-09-CR-0006766-2014.

As a condition of his prior probation, Bacon underwent sexual offender treatment, from 2019 through 2022. Dr. Valliere summarized:

> There were a number of concerning issues, like . . . Bacon sending pictures of his penis to someone through his phone, as well as denying that he ever looked at the child sexual abuse images for sexual gratification. Through treatment, even until the end, . . . Bacon was combative about wanting to [be] discharged much earlier, believing he was not a risk and that he learned "everything he needed to know." He was described by the end of his treatment as having insight, participating, and demonstrating leadership qualities. **He was assessed as having a moderate risk to reoffend.** . . .

SVP Evaluation, 11/28/23, at 4 (emphasis added).

Bacon was successfully discharged from treatment, and he completed his probation in December 2022. Dr. Valliere found it "notable" that Bacon recidivated, by committing the instant offenses, within two months of completing supervision. *Id*. at 2. Bacon was thirty years old and has never been married or in a long-term relationship.

Dr. Valliere next reviewed each of the fourteen SVP assessment factors set forth at 42 Pa.C.S.A. § 9799.24(b) (discussed *infra*). In this section, Dr. Valliere diagnosed Bacon with a mental abnormality: pedophilic disorder, "a deviant sexual interest in prepubescent children" and a lifetime disorder that cannot be managed or cured. *Id*. at 6-7. Dr. Valliere also diagnosed Bacon with "other specific personality disorder with antisocial and paranoid traits." *Id*. at 7 (unnecessary capitalization and emphasis omitted). Dr. Valliere opined that Bacon's antisocial traits — which included "his disregard for the law, failure to appreciate the impact of his behavior and respond to negative

consequences, disregard for the rights of others, a lack of empathy for victims, and repeated violations of the law and rules of society" — "would help facilitate his sexual offending, ***contributing to his risk of recidivism***." ***Id***. (emphasis added).

Pertinent to Bacon's argument on appeal, Dr. Valliere's report included a section with the heading, "Mental Abnormality/Personality Disorder Criterion." SVP Evaluation, 11/28/23, at 7 (unnecessary capitalization omitted). Under this heading, Dr. Valliere set forth four statutory criteria, including "likelihood of re-offending," and stated: "Bacon has repeatedly proven his own risk of recidivism. He has a history and disorder related to the likelihood of reoffense." ***Id***.

Under a separate section entitled, "Factors that are supported in the sexual assessment field as reasonably related to the ***risk of reoffense***," Dr. Valliere stated:

> Bacon has a deviant sexual arousal pattern and a personality disorder. He has stranger and related victims. . . . Bacon has a contact and non-contact sexual offense. He has never married or [been] in a long-term relationship. He is [a] sexual recidivist with repeated sentencing dates [*sic*]. . . . Bacon recidivated after treatment.

***Id***. (some emphasis omitted).

Pertinently, Dr. Valliere accurately set forth the statutory definition of "predatory:" "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole

or in part, in order to facilitate or support victimization." SVP Evaluation, 11/28/23, at 8; *see also* 42 Pa.C.S.A. § 9799.12 (definitions).

Finally, Dr. Valliere opined, within a reasonable degree of professionally certainty, that Bacon met the criteria to be classified as an SVP.

At the SVP hearing, both the trial court and the Commonwealth commented that Dr. Valliere's definition of predatory was "expansive," although the Commonwealth further stated, "I don't think the language of the statute bars [Dr. Valliere's] interpretation." N.T., 2/16/24, at 14, 19.

Bacon conceded that he was diagnosed with a mental abnormality, pedophilia, but argued his conduct was not predatory. *See id*. at 7-8, 13-14, 20-21. The Commonwealth argued Bacon was likely to engage in future predatory sexually violent offenses, and thus the trial court should find him to be an SVP. *See id*. at 21, 26.

The trial court took the matter of Bacon's SVP designation under advisement, and on February 27, 2024, determined he was an SVP. Bacon did not file a post-sentence motion, but filed a timely notice of appeal. Both he and the trial court have complied with Pa.R.A.P. 1925.

Bacon presents one issue for our review:

Did the trial court err in designating [Bacon] as a Sexually Violent Predator, where the Commonwealth failed to present sufficient evidence that [Bacon] suffers from a mental abnormality which renders him likely to engage in predatory sexually violent offenses?

Bacon's Brief at 7.

Bacon avers the Commonwealth failed to present sufficient evidence that he is likely to engage in future predatory behavior, and thus the trial court erred in finding he is an SVP. We note the applicable standard of review:

> A challenge to a trial court's SVP designation presents a challenge to the sufficiency of the evidence for which our standard of review is *de novo* and our scope of review is plenary. A challenge to the sufficiency of the evidence to support an SVP designation requires the reviewing court to accept the undiminished record of the case in the light most favorable to the Commonwealth. The reviewing court must examine all of the Commonwealth's evidence without consideration of its admissibility. . . . "We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied."

***Commonwealth v. Aumick***, 297 A.3d 770, 776-77 (Pa. Super. 2023) (citations and footnote omitted).

Under Subchapter H of SORNA, the SOAB must assess an individual convicted of a sexually violent offense[7] to determine whether they should be classified as an SVP. ***See*** 42 Pa.C.S.A. § 9799.24(b). SORNA defines an SVP as "[a]n individual who committed [an enumerated] sexually violent offense . . . who is determined to be [an SVP] under section 9799.24 (relating to assessments) due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9799.12 (definitions). The Act defines "predatory" as "[a]n act directed at a stranger or at a person with whom a relationship has been

---

[7] Possession of child pornography is an enumerated "sexually violent offense." ***See*** 42 Pa.C.S.A. §§ 9799.12, 9799.14(b)(9).

initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." ***Id***.

Section 9799.24(b) provides:

An assessment shall include, but not be limited to, an examination of the following:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9799.24(b)(1)-(4).

This Court has explained:

The trial court's inquiry at an SVP hearing is different from the SOAB's assessment. Whereas the SOAB member must consider the fifteen factors listed in section 9799.24(b), the trial court must determine whether the Commonwealth has proven by clear and convincing evidence that the defendant is an individual who has "a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses."

*Aumick*, 297 A.3d at 778-79 (citations omitted).

An "SOAB expert opinion falls within the general rules regarding expert witnesses." *Id*. at 778 (citations omitted).

[An] SOAB expert's opinion may be based on facts or data that the expert has been made aware of or personally observed so long as experts in the particular field reasonably rely on those kinds of facts or data in forming an opinion on the subject; the facts or data consulted need not be admissible for the expert's opinion to be admitted.

*Id*. at 781 (citation omitted). An SOAB expert may "consider more than the limited facts included in a plea colloquy, [including] records provided by state, county and local agencies, offices and entities[.]" *Id*. at 782. Such documents include an "affidavit of probable cause, criminal information,

- 10 -

criminal complaint, preliminary hearing transcript, and [any] investigative reports prepared by Child Protective Services." *Id*. at 781.

On appeal, Bacon contends the Commonwealth failed to present evidence that he is likely to engage in future predatory behavior. In support, Bacon maintains that Dr. Valliere's report identified four statutory criteria for a mental abnormality or personality disorder, one of which was the "likelihood of re-offending." Bacon's Brief at 13. Bacon contends that under this section, Dr. Valliere opined he had "a history and disorder related to the likelihood of reoffense," and thus he "suffer[ed] from a mental abnormality as defined in" SORNA. *Id*. In doing so, Bacon reasons, Dr. Valliere "conflate[d] the issue [of his] likelihood to reoffend with the issue of whether [he] suffers from a mental abnormality," by improperly assessing "the likelihood of reoffense in the context of the mental abnormality prong, not . . . predatory behavior." *Id*. Furthermore, Bacon asserts that although Dr. Valliere "focuse[d] at great length on [his] past behavior," she failed to offer an opinion as to the likelihood he would engage in predatory behavior in the future. *Id*. at 15.

Furthermore, Bacon claims Dr. Valliere presented "a widely expansive definition of predatory, well beyond the narrow definition" in SORNA — and the Commonwealth admitted this at the hearing. Bacon's Brief at 14 (*citing* N.T., 2/16/24 (Commonwealth stating, "I think that Dr. Valliere's definition of predatory under the statute is expansive . . . . I don't think the language of the statute bars that interpretation, but I do think it's a broad interpretation").

Bacon concludes the Commonwealth failed to meet its burden of presenting "direct[] and weighty evidence that" he met the criteria to be an SVP. *Id*. at 13, 17.

In determining Bacon met the criteria of an SVP, the trial court found the Commonwealth presented clear and convincing evidence that he was likely to reoffend. First, the trial court credited Dr. Valliere's opinions that: (1) pedophilic disorder cannot be cured; (2) "since [Bacon] is suffering from a lifetime condition, [he] is at risk to reoffend;" and (3) Bacon's "suffering from 'other specified personality disorder with antisocial and paranoid traits' . . . placed [him] at an increased risk for recidivism." Trial Court Opinion, 6/18/24, at 13-14.

Second, the trial court considered Dr. Valliere's review of Bacon's history, which included: (1) forming, in his teenage years, "a 'secretive, abuse relationship' with his seven-year-old half-sister, continuing to sexually abuse her for almost an entire year, events which both Northampton and Lehigh County Children and Youth Services deemed credible;" and (2) forming "relationships with strangers in order to gain access to sexually explicit photographs of children." *Id*. at 15.

Third, the trial court reasoned: "Bacon has demonstrated his own likelihood of reoffending, as this is [his] third conviction for an enumerated sexual offense, and the most recent offense occurred when [he] had been released from supervision for less than two months." *Id*. at 14. Finally, the

trial court observed that Bacon did not offer any expert testimony to negate Dr. Valliere's opinion that he was likely to engage in predatory behavior.

After review of the record, we determine the record evidence supports the trial court's findings that Bacon has a mental abnormality — pedophilic disorder, along with his antisocial disorder — which causes him to "likely to engage in predatory sexually violent offenses," and thus Bacon meets the classification of an SVP. 42 Pa.C.S.A. § 9799.12 (defining "SVP"). First, we reject Bacon's claim that Dr. Valliere's definition of "predatory" was improperly expansive. As stated above, Dr. Valliere accurately quoted SORNA's definition of this term at section 9799.12. **See** 42 Pa.C.S.A. § 9799.12; **see also** SVP Evaluation, 11/28/23, at 8.

Second, we reject the premise implicit in Bacon's argument — that Dr. Valliere solely addressed his likelihood to reoffend within her review of another prong, his mental abnormality and personality disorder. **See** Bacon's Brief at 13 (arguing, "The only evidence offered by the Commonwealth conflates the issue regarding likelihood to reoffend with the issue of whether [Bacon] suffers from a mental abnormality. No opinion regarding whether [he] is likely to engage in predatory sexually violent offenses was rendered."). Dr. Valliere did address Bacon's likelihood to reoffend in other sections of her report. In her review of the subsection 9799.24(b)(3)(iii) SVP assessment factor of Bacon's "characteristics," Dr. Valliere opined that Bacon's antisocial traits would "facilitate his sexual offending, **contributing to his risk of**

*recidivism*." SVP Evaluation, 11/28/23, at 7 (emphasis added). Dr. Valliere also set forth a separate section, entitled "factors that are supported in the sexual assessment field as reasonably *related to the risk of reoffense*," and cited Bacon's "deviant sexual arousal pattern and . . . personality disorder," past sexual offenses with both relatives and strangers, both "contact and non-contact sexual offense[s]," and instant recidivism after completing sexual offender treatment. *Id*. (emphasis added).

Third, Dr. Valliere noted, in her summary of Bacon's prior participation in sexual offender treatment, that "[h]e was assessed as having a moderate risk to reoffend." *Id*. at 4.

Finally, the interpretation and weighing of the above statements, as well as Dr. Valliere's report as a whole, was within the trial court's province. The trial court was free to believe all, part, or none of the evidence. *See Commonwealth v. Brooks*, 7 A.3d 852, 857 (Pa. Super. 2010) (citation omitted). In any event, Bacon's instant claim — that the Commonwealth failed to present a proper opinion by Dr. Valliere regarding his likelihood to reoffend — is belied by the record.

For the forgoing reasons, we conclude there is no merit to Bacon's challenge to the sufficiency of the evidence supporting his SVP designation. We affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>3/5/2025</u>