J-A23043-23

2023 PA Super 251

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
BROCK E. MOORE :
:
Appellant : No. 43 MDA 2023

Appeal from the Judgment of Sentence Entered January 6, 2022
In the Court of Common Pleas of Bradford County Criminal Division at
No(s): CP-08-CR-0000520-2020

BEFORE: LAZARUS, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: **FILED DECEMBER 01, 2023**

Appellant Brock E. Moore appeals the judgment of sentence entered by the Court of Common Pleas of Bradford County after Appellant pled guilty to Sexual Abuse of Children, Corruption of Minors, and Failure to Comply with Registration Requirements. Appellant claims the trial court erred in refusing to allow him to withdraw his guilty plea and in deeming him to be a sexually violent predator (SVP). We affirm.

Appellant was initially charged in connection with allegations that he had inappropriate sexual contact with a juvenile male. He was also charged with failing to register a Snapchat handle that he used to contact minors. As Appellant was previously convicted of a sexual offense in New York in 2014, Appellant was required to register all social media handles.

_____

[*] Former Justice specially assigned to the Superior Court.

After further investigation, the prosecution added five charges against Appellant for possessing child pornography which Appellant obtained by posing as a female on Facebook Messenger, attracting five juvenile males, and convincing them to share explicit photos of themselves.

On September 14, 2021, Appellant pled guilty to five counts of Sexual Abuse of Children, one count of Failure to Comply with Registration Requirements, and one count of Corruption of Minors. In his plea colloquy, Appellant agreed that as a result of his convictions, he was required to comply with the Sexual Offender Registration and Notification Act (SORNA) under which Appellant would be classified as a Tier III offender that required lifetime registration. Appellant admitted that he understood that he was required to submit to an SVP evaluation by the Sexual Offenders Assessment Board (SOAB). Appellant completed a written waiver requesting that he be sentenced before the SOAB evaluation was completed pursuant to *Commonwealth v. Whanger*, 30 A.3d 1212 (Pa.Super. 2011).

On January 6, 2022, the trial court sentenced Appellant to one to four years' imprisonment on each count of sexual abuse of children, twenty-one to forty-eight months' imprisonment for failure to comply with registration requirements, and nine to twenty-four months' imprisonment for corruption of minors. As each individual sentence ran consecutively, Appellant received an aggregate sentence of seven and half to twenty-six years' imprisonment.

On January 13, 2022, Appellant filed a timely counseled motion to modify sentence asking the trial court to run his sentences concurrently and

requesting a more lenient sentence. Appellant explained that his parents were in poor health and opined that it is "unlikely either would be alive when he is paroled." Motion to Modify Sentence, 1/13/22, at 1.

On March 25, 2022, the trial court held a hearing to evaluate Appellant's post-sentence motion and to review the SVP assessment. The Commonwealth presented the testimony of C. Townsend Velkoff, M.S., a psychologist and SOAB member, who the trial court qualified as an expert in the field of sexual offender evaluation without objection. The Commonwealth also entered Mr. Velkoff's expert report dated December 20, 2021 into evidence.

Mr. Velkoff indicated that he has provided mental health outpatient treatment for sex offenders since 1981 and has performed approximately 600 to 700 sexual offender assessments since 1996. Notes of Testimony (N.T.), 3/15/22, at 3. To conduct Appellant's SVP assessment, Mr. Velkoff relied on the materials provided by the court investigator, which included police reports, the criminal complaint, information, affidavit of probable cause, guilty plea, the presentence investigation report, and prior criminal records. *Id*. at 5-6.

Mr. Velkoff opined that Appellant suffers from a hebephilia, which he described as sexual interest in pubescent males in early adolescence. *Id*. at 7. Mr. Velkoff believed that Appellant's hebephilia was a "congenital or acquired condition that gave impetus to the sexual offending," overrode his emotional/volitional control, and would persist through Appellant's lifetime. *Id*. at 7-10; Velkoff report, at 9. Mr. Velkoff also pointed to Appellant's significant, organized, and deliberate predatory behavior in which Appellant

- 3 -

attracted young males online by portraying himself as a female, manipulated his victims into sharing photos of their genitals, and attempted to engage them in direct contact. *Id*. at 10-11. Mr. Velkoff noted that the victim with whom Appellant had direct contact had been diagnosed with executive functioning skills and was fairly vulnerable to Appellant's tactics. *Id*. at 13.

Mr. Velkoff noted that Appellant was previously convicted in New York for a prior sexual offense against a 13-year-old male. *Id*. at 8. Mr. Velkoff believed Appellant had not benefited from outpatient treatment he received after his New York conviction, given that Appellant moved to Pennsylvania, did not register his social media account knowing he was required to do so by SORNA, and employed social media to engage in predatory behavior in an attempt to lure young males to participate in sexual behavior. *Id*. at 11-12.

As a result, after assessing Appellant based on the relevant statutory factors, Mr. Velkoff opined within a reasonable degree of professional certainty that Appellant meets the criteria to be classified as an SVP. *Id*. at 14. On April 19, 2022, the trial court entered an order denying Appellant's post-sentence motion and deeming Appellant to an SVP.

Plea counsel did not file a notice of appeal, but instead attempted to file an untimely motion to withdraw Appellant's guilty plea on May 6, 2022, arguing that Appellant believed he would receive concurrent sentences and was not aware that the Commonwealth would pursue an SVP determination. On the same date, plea counsel filed a motion to withdraw as counsel.

On May 18, 2022, Appellant filed the instant *pro se* notice of appeal, but the trial did not forward it to this Court until January 11, 2023. Instead, the trial court entered an order on May 27, 2022, denying plea counsel's motion to withdraw Appellant's guilty plea.

On June 17, 2022, Appellant filed another *pro se* notice of appeal, which again was not properly forwarded to this Court, but was eventually docketed in this Court at 1376 MDA 2022.

On June 22, 2022, plea counsel filed a notice of appeal which was docketed in this Court as 900 MDA 2022. On June 30, 2022, the trial court granted plea counsel's motion to withdraw. On docketing statement review for 900 MDA 2022, the matter was remanded for the trial court to determine Appellant's eligibility for court-appointed counsel. In response, the trial court appointed Helen Stolinas, Esq. to represent Appellant.

This Court subsequently quashed the appeals at 1376 MDA 2022 and 900 MDA 2022 as the notices of appeal were filed more than thirty days after the judgment of sentence became final upon the entry of the trial court's April 19, 2022 order denying Appellant's post-sentence motion and deeming Appellant to be an SVP.[1]

However, Appellant's *pro se* May 18, 2022 notice of appeal was timely filed. We acknowledge that as a defendant has no right to hybrid

---

[1] This Court has provided that if "a defendant pleads guilty and waives a pre-sentence SVP determination, the judgment of sentence is not final until that determination is made." ***Commonwealth v. Schrader***, 141 A.2d 558, 561 (Pa.Super. 2016).

- 5 -

representation, this Court will not accept *pro se* motions while that defendant is represented by counsel. **Commonwealth v. Williams**, 151 A.3d 621, 623 (Pa.Super. 2016). However, this Court is required to docket a *pro se* notice of appeal even when the defendant is represented by counsel as a "notice of appeal protects a constitutional right [and] is distinguishable from other filings that require counsel to provide legal knowledge and strategy in creating a motion, petition, or brief." **Id.** at 624 (citing **Commonwealth v. Ellis**, 626 A.2d 1137 (Pa. 1993)); I.O.P. 65.24). As such, we may proceed to review the merits of the appeal.

Appellant raises the following issues on appeal:

1. Whether the court erred in denying Appellant's motion to withdraw his guilty plea without a hearing on the basis that his plea was not knowingly, voluntarily and intelligently entered?

2. Whether the court erred in deeming Appellant a Sexually Violent Predator?

Appellant's Brief, at 4.

First, Appellant argues that the trial court erred in denying his motion to withdraw his guilty plea without first holding a hearing. However, Appellant did not ask to withdraw his guilty plea in a timely post-sentence motion.

Pennsylvania Rule of Criminal Procedure 720, which allows defendants to file a post-sentence motion, requires that "all requests for relief from the trial court shall be stated with specificity and particularity, and shall be consolidated in the post-sentence motion." Pa.R.Crim.P. 720(B)(1)(a). Rule 720 specifically permits defendants to file post-sentence motions "challenging

the validity of a plea of guilty … or the denial of a motion to withdraw a plea of guilty." Pa.R.Crim.P. 720(B)(1)(a)(i). However, "a written post-sentence motion shall be filed no later than 10 days after imposition of sentence." Pa.R.Crim.P. 720(A)(1).

This Court has held that "[a] defendant wishing to challenge the voluntariness of a guilty plea on direct appeal must either object during the plea colloquy or file a motion to withdraw the plea within ten days of sentencing. Failure to employ either measure results in waiver." *Commonwealth v. Lincoln*, 72 A.3d 606, 609-10 (Pa.Super. 2013). *See Commonwealth v. Rush*, 959 A.2d 945, 949 (Pa.Super. 2008) ("[A] request to withdraw a guilty plea on the grounds that it was involuntary is one of the claims that must be raised by motion in the trial court in order to be reviewed on direct appeal").

In this case, Appellant filed a timely post-sentence motion, but this filing did not contain a challenge to the validity of Appellant's guilty plea or seek to withdraw his guilty plea. Rather, Appellant filed a motion to modify sentence asking the trial court to give him a more lenient sentence.

Appellant did not file a motion to withdraw his guilty plea until after the trial court held a hearing and entered an order denying the post-sentence motion. Thus, we conclude that this claim is waived as Appellant failed to raise a timely request to withdraw his guilty plea.

Second, Appellant challenges the trial court's decision to classify him as an SVP. Our standard of review for a challenge to the sufficiency of the evidence relating to a trial court's SVP designation is as follows:

[i]n order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is an SVP. As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

*Commonwealth v. Hollingshead*, 111 A.3d 186, 189 (Pa.Super. 2015) (citation and brackets omitted).

Our courts have explained that:

The procedure for determining SVP status is statutorily mandated and well-defined. Under revised Subchapter H of SORNA, after a person has been convicted of an offense listed in [42 Pa.C.S.A. §] 9799.14, the trial court orders an assessment by the SOAB. The SOAB must assess all individuals convicted of sexually violent offenses to determine whether they should be classified as an SVP. When assessing whether a particular offender should be classified as an SVP, the board shall establish standards for evaluations and for evaluators conducting the assessments.

*Commonwealth v. Aumick*, 297 A.3d 770, 777 (Pa.Super. 2023) (*en banc*) (citations, quotation marks, and footnote omitted).

Subchapter H of SORNA specifically provides that the SOAB assessment shall include, but not be limited to, an examination of the following:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

- 8 -

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9799.24(b).

The trial court's analysis at an SVP hearing differs from the assessment conducted by SOAB. "Whereas the SOAB member must consider the fifteen factors listed in section 9799.24(b), the trial court must determine whether the Commonwealth has proven by clear and convincing evidence that the defendant is an individual who has 'a mental abnormality or personality

disorder that makes the individual likely to engage in predatory sexually violent offenses.'" *Aumick*, 297 A.3d at 778–79 (citing 42 Pa.C.S.A. § 9799.12 (providing the definition of a "sexually violent predator"). This Court has clarified that an SVP assessment does not constitute "a trial or a separate criminal proceeding that subjects the defendant to additional punishment. SVP status, therefore, does not require proof beyond a reasonable doubt; rather, the court decides SVP status upon a show of clear and convincing evidence that the offender is, in fact, an SVP." *Aumick*, 297 A.2d at 779.

Appellant first argues that the SOAB evaluator relied on unproven allegations not included in Appellant's guilty plea to arrive at his conclusion that Appellant should be classified as an SVP. With respect to Appellant's guilty plea to five counts of Sexual Abuse of Children under 18 Pa.C.S.A. § 6312, defense counsel set forth the factual basis for Appellant's plea:

> [Defense counsel:] And then, on the pornography, the police got a search warrant, they searched your house, they found a thumb-drive, or disk, and there was five separate incidences of five separate individuals, under the age of eighteen, engaging in some sort of sexual act?
>
> [Appellant:] Yes.

N.T., 9/14/21, at 13.

Based on this exchange, Appellant claims the SOAB evaluation should have been limited to a review of the facts contained in his plea colloquy in which he admitted to the possession of child pornography. Appellant argues that the SOAB evaluator improperly considered police reports, affidavits of probable cause and other reports provided by the SOAB investigator which

alleged that Appellant contacted five male juveniles separately online, posed as a female, and manipulated them into sharing explicit photos of themselves.

This Court rejected a similar argument in *Aumick* and held that the SOAB evaluator "was permitted to consider the affidavit of probable cause, criminal information, criminal complaint, preliminary hearing transcript, and the investigative reports prepared by Child Protective Services" in making the SVP assessment. This Court explained that:

> [p]ursuant to revised Subchapter H, the SOAB **must** undertake a comprehensive assessment of a defendant convicted of a sexually violent offense by considering the fifteen factors set forth in section 9799.24(b)(1)-(4). Section 9799.24(c) expressly requires that **"[a]ll State, county and local agencies, offices and entities in this Commonwealth, including juvenile probation officers, shall cooperate by providing copies of records and information as requested by the board in connection with the court-ordered assessment ...."** 42 Pa.C.S. § 9799.24(c) (emphasis added). Moreover, within ninety days of a defendant's qualifying conviction, the SOAB **must** prepare a written report regarding its assessment which includes, at a minimum, the following information: (1) a concise narrative of the individual's conduct; (2) whether the victim was a minor; (3) the manner of weapon or physical force used or threatened; (4) if the offense involved unauthorized entry into a room or vehicle occupied by the victim; (5) if the offense was part of a course or pattern of conduct involving multiple incidents or victims; and (6) previous instances in which the individual was determined guilty of an offense subject to this subchapter or of a crime of violence as defined in section 9714(g) (relating to sentences for second and subsequent offenses).
>
> Given these statutory mandates, it is clear that the legislature intended that the SOAB member consider ... the information contained in records provided by state, county and local agencies, offices and entities in this Commonwealth when making an SVP assessment and preparing a statutorily compliant written report. To be sure, it would be the rare occasion on which the SOAB member would be able to fulfill its statutory obligations if its SVP

- 11 -

assessments and written reports were limited to facts contained in a plea colloquy, admitted into evidence, or determined by the trier of fact.

*Aumick*, 297 A.3d at 781-82 (emphasis in original, cleaned up).

Further, this Court emphasized that a trial court, in conducting an SVP hearing, is not responsible for "evaluating the veracity of the facts underlying the expert's testimony." *Id*. at 782 (citation omitted). Instead, the information "presented at an SVP hearing [is] not being offered for the truth of the matter asserted," but "to supply the basis for the expert's opinion in accordance with our Rules of Evidence." *Id*. (citations omitted). *See* Pa.R.E. 703, 705. "[A]n expert's opinion which is rendered to a reasonable degree of professional certainty is itself, substantive evidence." *Aumick*, 297 A.3d at 782.

At the SVP hearing, Appellant did not present his own expert witness or any other evidence to discredit Mr. Velkoff's assessment that Appellant should be deemed an SVP. To the extent that Appellant criticizes the credibility or reliability of Mr. Velkoff's opinion, such claims go to the weight of the evidence presented rather than the sufficiency of the Commonwealth's case.

Appellant also asserts that the Commonwealth failed to meet its burden to show he should be classified as an SVP as the mental abnormality relied upon by the SOAB evaluator was hebephilia, which is not recognized as a mental disorder in the Diagnostic and Statistical Manual – Version V (DSM-V).

We initially note that Appellant never presented this argument to the trial court, but instead raises it for the first time on appeal. It is well-settled

that issues not raised before the trial court cannot be advanced for the first time on appeal. Pa.R.A.P. 302(a).

Even assuming *arguendo* that Appellant had properly preserved this issue for review, he would not be entitled to relief. Our courts have not required the prosecution to prove that a defendant has been diagnosed with a specific psychological or psychiatric disorder in evaluating SVP status. Our Supreme Court has held that an "argument that expert testimony on SVP status does not square with prevailing standards and methodology in the psychological and psychiatric diagnostic communities misses the mark" because our legislative schemes relative to sex offenders have not required "proof of a standard of diagnosis that is commonly found and/or accepted in a mental health diagnostic paradigm." ***Commonwealth v. Conklin***, 897 A.2d 1168, 1178 (Pa. 2006) (quoting ***Commonwealth v. Dengler***, 890 A.2d 372, 383 (Pa. 2005)).

In addition, this Court has concluded that "a trial court may conclude, based upon the expert testimony and facts in a given case, that a hebephilia diagnosis is sufficient to find that a defendant has a mental abnormality" for the purposes of an SVP evaluation. ***Hollingshead***, 111 A.3d at 193. While this Court acknowledged that hebephilia has not been included in the DSM-IV or DSM-V as a mental disorder, "the debate surrounding hebephilia diagnoses, and their use in SVP proceedings, goes to the weight of the expert witness' testimony." ***Id***.

In this case, the trial court determined that the Commonwealth met its burden to show that Appellant should be deemed an SVP, explaining that:

> [b]ased on Mr. Velkoff's credible testimony and report, the Commonwealth established by clear and convincing evidence that [Appellant] suffers from a mental abnormality, specifically a congenital or acquired "condition," *i.e.*, paraphilia disorder/ hebephilia, and that [Appellant] engaged in deliberate, organized, and purposeful predatory behavior to lure young males into sexual encounters, despite having participated in sex offender therapy after his first conviction for a sex crime.

Order, 4/19/22, at 1.

We conclude that the trial court's decision to certify Appellant as an SVP was supported by sufficient evidence. The trial court credited Mr. Velkoff's assessment of the statutory factors and relevant facts in this case. Appellant's claim that the trial court should not have relied on Mr. Velkoff's hebephilia diagnosis in its SVP assessment, goes to the weight of the evidence, which Appellant did not challenge.

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/01/2023

- 14 -