J-S03035-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SANTOS VELEZ-PACHECO | : | |
| | : | |
| Appellant | : | No. 866 MDA 2023 |

Appeal from the Judgment of Sentence Entered January 25, 2023
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0005911-2019

BEFORE: OLSON, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY BECK, J.:                 **FILED MARCH 07, 2024**

Santos Velez-Pacheco ("Velez-Pacheco") appeals from the judgment of sentence imposed by the Dauphin County Court of Common Pleas ("trial court") after a jury convicted him of attempted rape of child, aggravated indecent assault of a child, indecent assault – complainant less than thirteen years of age, unlawful contact with a minor, incest of a minor, and corruption of minors.[1] On appeal, Velez-Pacheco challenges the sufficiency of the evidence to support each of his convictions (with the exception of incest of a minor); the discretionary aspects of his sentence; and his designation as a sexually violent predator ("SVP"). Because we find no merit to any of Velez-Pacheco's claims, we affirm.

---

[1] 18 Pa.C.S. §§ 901(a), 3125(b), 3126(a)(7), 6318(a)(1), 4302(b)(1), 6301(a)(1)(ii).

The trial court detailed the factual and procedural histories of this case as follows:

> At the trial in this matter, the testimony of [K.V.] ([] "Victim"), who is [Velez-Pacheco]'s daughter, described a progressively lewd course of conduct by [Velez-Pacheco], which continued for several years until Victim was 13 years old.
>
> **Incidents at King's Manor Apartment.**
>
> The incidents between [Velez-Pacheco] and Victim began at the King's Manor Apartment Complex in Susquehanna Township, where Victim lived in an apartment with her mother ([] "Mother"); her younger brother []; and [Velez-Pacheco], who was then married to Mother. [N.T., 11/29-12/1/2022, at 91-92]. During the time the family lived at King's Manor, Victim was approximately between the ages of 7 and 10. Mother worked at Walmart overnight, so Victim would often be at home at night with just [her brother] and [Velez-Pacheco]. [*Id.*] at 66, 71-72. When asked at trial to recount the earliest incidents involving [Velez-Pacheco] at King's Manor, Victim recounted that sometimes [Velez-Pacheco] would kiss her on the lips as the two were lying fully clothed in bed watching *Friends*, and while [her brother] was in a different room watching television. [*Id.*] at 92-94. Victim recalled another kissing incident where she came into the dining room to ask her father a question, and [Velez-Pacheco] kissed her on the lips while the two were in the dining room. [*Id.*] at 99. On other occasions while the two were lying in bed watching television, [Velez-Pacheco] would get on top of her while both were fully clothed. [*Id.*] at 95-96. Victim recalled one specific incident in which [Velez-Pacheco], who was fully clothed, got on top of Victim, such that they were face-to-face and began pressing his clothes-covered penis between Victim's clothed legs. [*Id.*] at 96-97. Victim testified that these types of incidents occurred "many times" at King's Manor, but she did not recall exactly how many times per week. [*Id.*] at. 100.
>
> Although most of [Velez-Pacheco]'s contact with Victim at King's Manor occurred while the two were fully clothed, Victim recalled one encounter in which she was clothed but [Velez-Pacheco] was naked. [*Id.*] at 97. During that encounter[, i]n which the two were sitting in bed, [Velez-Pacheco] had Victim place her mouth on his penis and perform oral sex. [*Id.*] at 97-

99. Because Victim was young and unfamiliar with sex at the time, she did not understand what she was observing when [Velez-Pacheco] ejaculated, and she asked [Velez-Pacheco] if he was peeing. [*Id.*] at 98. [Velez-Pacheco] responded by pushing her, getting off the bed, and telling Victim not to say anything about what they had done because they could get in trouble. [*Id.*]

Victim stated that during the time she lived at King's Manor, she did not tell anyone about the encounters with [Velez-Pacheco] because she felt scared and guilty, and felt as if she might get in trouble. [*Id.*] at 102. In fact, Victim recalled one specific time when [her brother] asked her if [Velez-Pacheco] kissed her, but she denied it because she was scared. [*Id.*] at 101.

**Incidents at Locust Lane**

In 2016, Victim and her family, including [Velez-Pacheco], moved from King's Manor to a house on Locust Lane in Lower Paxton Township. [*Id.*] at 67, 71-72. About a year after the family moved to Locust Lane, [Velez-Pacheco] and Mother separated, and [Velez-Pacheco] moved out of the house. [*Id.*] at 73-74. However, even after he moved out, [Velez-Pacheco] still came to the house in the evenings and stayed overnight in the house to babysit Victim […] because Mother still worked at night. [*Id.*] at 74. Victim's testimony established that [Velez-Pacheco]'s lewd behavior towards her continued when they moved to Locust Lane, and as she had done for King's Manor, she also recounted various specific incidents that she remembered from Locust Lane.

First, Victim recalled that one night when she was either in fifth or sixth grade; she woke up in her bed to find that [Velez-Pacheco] had entered her bedroom while she was sleeping. [*Id.*] at 105-13. [Velez-Pacheco] who was not wearing any pants, was on top of Victim, and he was removing her pants. [*Id.*] at 107-08. After Victim's pants had been removed[,] [Velez-Pacheco] repeatedly pushed her legs apart and tried multiple times to put his penis into her vagina but was unable to do so. [*Id.*] at 109-10. [Velez-Pacheco] then left the room and Victim tried to go back to sleep. [*Id.*] at 110-11. However, shortly thereafter, [Velez-Pacheco] returned to Victim's bedroom again, this time bearing a gun. [*Id.*] at 111-12. While holding the gun, [Velez-Pacheco] repeatedly asked whether he was a bad father and whether he should kill himself. [*Id.*] at 112.

Second, Victim recalled a night when [Velez-Pacheco] came into her bedroom drunk and tried to get onto her bed. [*Id.*] at 114. Victim repeatedly pushed [Velez-Pacheco] away, and he eventually ended up leaving the room. [*Id.*] at 114-15. Victim had a conversation with Mother the next morning and learned that Mother had kicked [Velez-Pacheco] out of their (Mother's and [Velez-Pacheco]'s) bedroom because Mother did not want [Velez-Pacheco] coming to bed drunk. [*Id.*]

Next, Victim recalled a morning when [Velez-Pacheco] came into the bathroom and started looking at her when she was in the shower getting ready for school. [*Id.*] at 117-118. Victim told [Velez-Pacheco] to stop looking at her, but she did not remember what [Velez-Pacheco] said in response. [*Id.*] at 117-18. After she finished her shower, Victim walked out into her bedroom, where her paternal grandmother was sleeping in her bed. [*Id.*] At some point, Victim's grandmother asked her whether [Velez-Pacheco] ever looks at her, but Victim denied it because she was scared of what could happen to her dad or herself. [*Id.*] at 117.

Third, Victim recalled that on multiple occasions, … she woke up to [Velez-Pacheco] rubbing her back or placing parts of himself inside her pants. Victim recalled one specific evening when she woke up to [Velez-Pacheco] trying to insert his fingers into her vagina, which caused her pain. [*Id.*] at 119. Another time, Victim recalled, she woke up after feeling [Velez-Pacheco]'s face between her legs. [*Id.*] at 121-22. After she awoke, she felt [Velez-Pacheco]'s tongue touching her vagina. [*Id.*] at 122. At the time, Victim felt "disgusted" and "scared," and she wasn't sure what she could do. [*Id.*]

Victim testified that at around age 12 or 13[], she started to "fight against" [Velez-Pacheco] more and push him away more as he attempted his lewd conduct. [*Id.*] at 118. However, according to victim[,] whenever she resisted [Velez-Pacheco], he would call her names and threaten disciplinary action such as grounding her and taking her phone away. [*Id.*] Victim recounted one specific evening when [Velez-Pacheco] came to her room and started kicking him repeatedly. [*Id.*] at [118-19]. [Velez-Pacheco] became angry and started pushing Victim and asking, "what's wrong with [her]." [*Id.*]

At some point around September 2019, when Victim was 13 years old, a friend of hers, Jovanna, told her that she herself had experienced some sort of sexual abuse. [*Id.*] at 123-25. Victim

- 4 -

testified that this made her feel less ashamed and more comfortable sharing stories of her own experiences. [*Id.*] at 125. Therefore, Victim told Jovanna and another friend, Jocelyn, about what she had experienced with [Velez-Pacheco]. [*Id.*] at 125-26. Jovanna and Jocelyn then advised Victim to tell her [m]other about what [Velez-Pacheco] was doing. [*Id.*] at 126-28. However, Victim did not tell Mother right away because she never felt close to her mother and "never knew how to talk to her." [*Id.*] at 128. Instead, upon Jovanna's urging, Victim spoke with a guidance counselor at her school on or about October 21, 2019. [*Id.*] at 128-129, 200.

When speaking with the guidance counselor, Victim did not share every detail of the incidents, nor did she share the identity of the perpetrator, but she did tell the counselor that she was being assaulted at home. [*Id.*] at 129. The counselor then called Mother, who came to the school. [*Id.*] While the counselor was in another room, Victim spoke with Mother and shared who the perpetrator was. [*Id.*] However, at that time, she still did not tell Mother every detail about what happened. [*Id.*] at 130. A patrol officer from the Lower Paxton Township Police Department was then sent to the school. [*Id.*] As she had done with the counselor and her mother, Victim told the patrol officer that something was happening to her at home, but she did not feel comfortable divulging much detail. [*Id.*] Victim and Mother then went home, and the patrol officer contacted Detective Jeffrey Corcoran about the situation. [*Id.*] at 198. Detective Corcoran then apprised Detective Gregory Langley, who went to Victim's house later that day. [*Id.*] at 198-99. Detective Langley arranged for Victim to be interviewed by the Children's Resource Center ("CRC") two days later. [*Id.*] at 200-01. It was not until Victim was interviewed at the CRC, on October 23, 2019, that she began sharing some more detail about what happened to her, although she still [did not] share every detail because it made her feel "disgusting" and "ashamed." [*Id.*] at 131, 200-01.

[The police arrested Velez-Pacheco and the Commonwealth charged him for his conduct.] Following a jury trial held from November 29 to December 1, 2022, a jury found [Velez-Pacheco] guilty [of attempted rape of child, aggravated indecent assault of a child, indecent assault – complainant less than thirteen years of age, unlawful contact with a minor, incest of a minor, and corruption of minors]. On January 25, 2023, [the trial court] held a hearing to determine whether [Velez-Pacheco] should be

- 5 -

classified as a[n SVP] and to impose sentence. During the hearing, [the trial court] heard testimony from Robert Stein MD [("Dr. Stein")][,] a licensed psychologist who is a member of the Pennsylvania Sexual Offenders Assessment Board [(SOAB)].

Based upon the testimony of Dr. Stein, [the trial court] found [Velez-Pacheco] to be a[n SVP]. Thereafter, the Commonwealth presented victim-impact statement[s] from Victim and Mother, and [Velez-Pacheco] made a statement on his own behalf. [The trial court] then sentenced [Velez-Pacheco] to an aggregate [term] of 11 to 22 years[ of] incarceration[.]

\* \* \*

On February 6, 2023, [Velez-Pacheco] filed a post-sentence [m]otion, which [the trial court] denied [] on May 17, 2023. On June 15, 2023, [Velez-Pacheco] filed a [n]otice of [a]ppeal to the Superior Court, and on June 23, 2023, [Velez-Pacheco] was directed to file a [c]oncise [s]tatement of [e]rrors [c]omplained of on [a]ppeal. [Velez-Pacheco] filed his [c]oncise [s]tatement on August 7, 2023.

Trial Court Opinion, 9/26/2023, at 1-7 (formatting modified).

On appeal, Velez-Pacheco presents the following issues for review:

1. Whether the evidence presented by the Commonwealth viewed in the light most favorable to the Commonwealth, was sufficient to prove beyond a reasonable doubt that [Velez-Pacheco] was guilty of all counts (where the evidence offered to support the verdict of guilt is so unreliable and/or contradictory as to make the verdict based upon conjecture[)]?

2. Whether the trial court abused its discretion in sentencing [Velez-Pacheco] to consecutive sentences[?]

3. Whether the evidence presented by the Commonwealth, viewed in the light most favorable to the Commonwealth, was clear and convincing to establish that [Velez-Pacheco] was a[n SVP]?

Velez-Pacheco's Brief at 12.

For his first issue, Velez-Pacheco challenges the sufficiency of the evidence presented at trial to support his convictions of aggravated indecent assault of a child, indecent assault – complainant less than thirteen years of age, unlawful contact with a minor, and corruption of minors. *See id.* at 46-49, 56-63. Beginning with his convictions of aggravated indecent assault of a child and indecent assault – complainant less than thirteen years of age, Velez-Pacheco argues that the evidence was insufficient because the Commonwealth failed to present evidence that Victim was less than thirteen years old when he assaulted her. *Id.* at 46-49, 56-63. Velez-Pacheco maintains that at trial, Victim could not recall whether the crimes occurred before or after her thirteenth birthday. *Id.* at 60. On this same basis, Velez-Pacheco contends that the evidence was insufficient to sustain his unlawful contact with a minor and corruption of minors convictions, because his aggravated indecent assault of a child and indecent assault – complainant less than thirteen years of age convictions were necessary components for sustaining the convictions of those two crimes. *Id.* at 47-49.[2]

---

[2] We note that the trial court determined that Velez-Pacheco's sufficiency of the evidence claim should be waived because he failed to identify the specific elements of the charged offenses the Commonwealth failed to prove at trial in his 1925(b) statement. Trial Court Opinion, 9/26/2023, at 8-9; *see also* Pa.R.A.P. 1925(b)(4)(ii); *Commonwealth v. Reeves*, 907 A.2d 1, 2 (Pa. Super. 2006)("If a Rule 1925(b) statement is too vague, the trial judge may find waiver and disregard any argument."). While Velez-Pacheco's 1925(b) statement is not the model of clarity, given the relatively straightforward nature of Velez-Pacheco's sufficiency argument on appeal, we decline to find waiver in this instance.

Our Court's standard of review of a challenge to the sufficiency of the evidence is well settled:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Juray*, 275 A.3d 1037, 1042 (Pa. Super. 2022) (quotation marks and citations omitted).

The Pennsylvania Crimes Code defines aggravated indecent assault of a child as follows:

> **(a) Offenses defined.--**Except as provided in sections 3121 (relating to rape), 3122.1 (relating to statutory sexual assault), 3123 (relating to involuntary deviate sexual intercourse) and 3124.1 (relating to sexual assault), a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:
>
> > (1) the person does so without the complainant's consent;
> >
> > (2) the person does so by forcible compulsion;
> >
> > (3) the person does so by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;
> >
> > (4) the complainant is unconscious or the person knows that the complainant is unaware that the penetration is occurring;
> >
> > (5) the person has substantially impaired the complainant's power to appraise or control his or her conduct by administering or employing, without the knowledge of the

- 8 -

complainant, drugs, intoxicants or other means for the purpose of preventing resistance;

(6) the complainant suffers from a mental disability which renders him or her incapable of consent;

\* \* \*

**(b) Aggravated indecent assault of a child.--**A person commits aggravated indecent assault of a child when the person violates subsection (a)(1), (2), (3), (4), (5) or (6) and the complainant is less than 13 years of age.

18 Pa.C.S. § 3125(a)(1)-(6), (b).

"By definition, the statutory provisions that define the offense of aggravated indecent assault exclude the activities" that fit within the definition "sexual intercourse," (*i.e.*, vaginal, oral, and anal intercourse). *Commonwealth v. Dove*, 301 A.3d 427, 434 (Pa. Super. 2023). Through the crime of aggravated indecent assault, the General Assembly has prohibited the act of "nonconsensual digital penetration.". *Commonwealth v. Kelley*, 801 A.2d 551, 557 (Pa. 2002).

Section 3126(a)(7) of the Pennsylvania Crimes Code defines indecent assault – complainant less than thirteen years of age as follows:

**(a) Offense defined.--**A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

\* \* \*

(7) the complainant is less than 13 years of age[.]

18 Pa.C.S. § 3126(a)(7). Indecent contact is "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101.

The record reflects that Victim was unable to recall during her testimony whether she was less than thirteen years of age when Velez-Pacheco digitally penetrated her. N.T., 11/29/2023–12/1/2023, at 120-23. The Commonwealth, however, also introduced as evidence Victim's interview with the CRC. *Id.* at 191, Exhibit 1. During her interview with the CRC, Victim repeatedly indicated that she was eleven years old when Velez-Pacheco digitally penetrated her. *Id.* at 191, Exhibit 1 (CRC Interview, 10/23/2019, at 28-29, 44).

Although Victim's testimony at trial was not entirely consistent with her CRC interview, this Court has made clear that the existence of inconsistencies in a witness' testimony does not alone render the evidence insufficient to support a verdict. *Commonwealth v. Lyons*, 833 A.2d 245, 258 (Pa. Super. 2003). The jury, as factfinder, "is free to believe all, part, or none of the evidence presented." *Commonwealth v. Williams*, 302 A.3d 117, 120 (Pa. Super. 2023) (quotations and citation omitted). Here, there was evidence of record that Victim was less than thirteen years of age when Velez-Pacheco digitally penetrated her. *See* N.T., 11/29/2023–12/1/2023, at 191. We therefore conclude that the evidence was sufficient to sustain Velez-Pacheco's aggravated indecent assault of a child conviction. *See Commonwealth v.*

- 10 -

*Juray*, 275 A.3d 1037, 1046 (Pa. Super. 2022) (concluding that the evidence that appellant digitally penetrated the victim when she was less than thirteen years of age was sufficient to establish the aggravated indecent assault of a child conviction).

For Velez-Pacheco's indecent assault – complainant less than thirteen years of age conviction, the record reflects that Victim testified that Velez-Pacheco forced her to perform oral intercourse on him until he ejaculated. N.T., 11/29/2023–12/1/2023, at 98-99. Victim stated that this incident occurred while she lived at King's Manor Apartments. *Id.* at 99. The record further reflects that Victim lived at King's Manor Apartments until 2016, when she was ten years old. *Id.* at 71.

Thus, the record plainly reveals evidence indicating that Velez-Pacheco committed acts constituting indecent assault while Victim was less than thirteen years of age. *See Commonwealth v. Martin*, 297 A.3d 424, 434-35 (Pa. Super. 2023) (holding that oral intercourse constitutes indecent contact sufficient to sustain an indecent assault conviction). Accordingly, we conclude that the evidence was sufficient to sustain Velez-Pacheco's indecent assault – complainant less than thirteen years of age conviction. *See id.*

In light of the foregoing, we must also reject Velez-Pacheco's challenge to the sufficiency of the evidence with respect to his unlawful contact with a minor and corruption of minors convictions, which he based solely on his assertion that the evidence was not sufficient to sustain his aggravated

indecent assault of a child and indecent assault – complainant less than thirteen years of age convictions. Therefore, Velez-Pacheco's first issue does not entitle him to relief.

For his second issue, Velez-Pacheco argues that his sentence was excessive because the trial court imposed his one-to-two-year sentence for his conviction of criminal attempt – rape of child consecutive to his ten-to-twenty-year sentence for his aggravated indecent assault of a child conviction. Velez-Pacheco's Brief at 49-50, 53-54. This issue challenges the discretionary aspects of Velez-Pacheco's sentence. *See Commonwealth v. Zirkle*, 107 A.3d 127, 133 (Pa. Super. 2014) (stating that a claim arguing that a sentence is excessive because the trial court imposed consecutive sentences challenges the discretionary aspects of the sentence).

"The right to appellate review of the discretionary aspects of a sentence is not absolute and must be considered a petition for permission to appeal." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014). To invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence, an appellant must satisfy a four-part test:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

*Commonwealth v. Baker*, 72 A.3d 652, 662 (Pa. Super. 2013). "A defendant presents a substantial question when he sets forth a plausible

argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." ***Commonwealth v. Dodge***, 77 A.3d 1263, 1268 (Pa. Super. 2013) (quotations and citations omitted).

Velez-Pacheco satisfied the first three requirements of the four-part test by filing a timely notice of appeal, raising the issue in his post-sentence motion, and including a Pa.R.A.P. 2119(f) statement in his appellate brief. ***See*** Notice of Appeal, 6/15/2023; Post-Sentence Motion, 2/6/2023; Velez-Pacheco's Brief at 49-52. We must therefore determine if Velez-Pacheco has raised a substantial question for review.

We evaluate what constitutes a substantial question on a case-by-case basis. ***Commonwealth v. Paul***, 925 A.2d 825, 828 (Pa. Super. 2007). We have found that a substantial question exists "when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Phillips***, 946 A.2d 103, 112 (Pa. Super. 2008) (citation omitted).

Here, Velez-Pacheco argues that the trial court should have imposed concurrent, rather than consecutive, sentences for his aggravated indecent assault of a child and criminal attempt – rape of a child convictions. This Court has consistently recognized that excessiveness claims premised on the

imposition of consecutive sentences do not raise a substantial question for our review. *See Commonwealth v. Caldwell*, 117 A.3d 763, 769 (Pa. Super. 2015) (en banc) ("A court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question[.]"); *Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013) ("Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question.").

We have, however, recognized that consecutive sentences can be so manifestly excessive that, in extreme circumstances, such a claim may give rise to a substantial question. *Commonwealth v. Moury*, 992 A.2d 162, 171–72 (Pa. Super. 2010). To make this determination, our focus is on "whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct in this case." *Commonwealth v. Mastromarino*, 2 A.3d 581, 588 (Pa. Super .2010).

Conducting this evaluation, we conclude that Velez-Pacheco has failed to raise a substantial question for our review. Velez-Pacheco's argument is that his sentence was excessive because, had the trial court ordered his sentences to run concurrently, he would have had an aggregate sentence of

ten to twenty years as opposed to the eleven to twenty-two years that he received – a difference of one year on his minimum sentence and two years on his maximum sentence. In light of the circumstances of this case and the heinous criminal acts committed by Velez-Pacheco, we decline to find the trial court's decision to impose consecutive sentences manifestly excessive such that it raises a substantial question. Accordingly, we do not have jurisdiction to review Velez-Pacheco's second issue.

For his final issue, Velez-Pacheco challenges his designation as an SVP. Velez-Pacheco's Brief at 54-55, 64-66. Specifically, Velez-Pacheco argues that the evidence presented at his SVP hearing failed to show that he suffers from a mental abnormality or personality disorder that makes him likely to engage in predatory sexually violent offenses. *Id.* at 55, 64-66.

"A challenge to a trial court's SVP designation presents a challenge to the sufficiency of the evidence for which our standard of review is de novo and our scope of review is plenary." *Commonwealth v. Aumick*, 297 A.3d 770, 776 (Pa. Super. 2023) (en banc).

> A challenge to the sufficiency of the evidence to support an SVP designation requires the reviewing court to accept the undiminished record of the case in the light most favorable to the Commonwealth. The reviewing court must examine all of the Commonwealth's evidence without consideration of its admissibility. … We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

*Id.* at 776–77 (quotation marks and citations omitted). "The clear and convincing standard requires evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts [at] issue." ***Commonwealth v. Meals***, 912 A.2d 213, 219 (Pa. 2006) (quotation marks and citations omitted).

The procedure for SVP determinations is statutorily mandated. ***Aumick***, 297 A.3d at 777. Under Subchapter H of SORNA, the Commonwealth must first demonstrate that an individual has been convicted of a "sexually violent offense." 42 Pa.C.S. § 9799.24(a). SORNA defines a sexually violent offense as "[a]n offense specified in section 9799.14 (relating to sexual offenses and tier system) as a Tier I, Tier II[,] or Tier III sexual offense committed on or after December 20, 2012, for which the individual was convicted." ***Id.*** § 9799.12. Here, there is no dispute that Velez-Pacheco was convicted of multiple sexually violent offenses enumerated in section 9799.12.

Following conviction, but before sentencing, the trial court must order an assessment by the SOAB of an individual who has committed a sexually violent offense to determine whether that individual should be classified as an SVP. 42 Pa.C.S. § 9799.24(a)-(b). The assessment must include, but is not limited to, an examination of the following fifteen factors:

(1) Facts of the current offense, including:

    (i) Whether the offense involved multiple victims.

    (ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age of the individual.

(ii) Use of illegal drugs by the individual.

(iii) A mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

*Id.* § 9799.24(b)(1)-(4). Upon completing its assessment, the SOAB must submit a written report to the district attorney, who may file a praecipe for a hearing on the matter. *Id.* § 9799.24(d), (e)(1); *see also Aumick*, 297 A.3d at 777.

At an SVP hearing, the trial court's inquiry differs from the SOAB's assessment. *Aumick*, 297 A.3d at 777. While the SOAB must evaluate the

fifteen factors listed in section 9799.24(b), "the trial court must determine whether the Commonwealth has proven by clear and convincing evidence that the defendant is an individual who has a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." *Id.* at 777-79 (quotation marks and citation omitted); *see also Commonwealth v. Butler*, 226 A.3d 972, 992 (Pa. 2020) (explaining that an SVP is an individual that has committed a sexually violent offense "who [has] been individually determined to suffer from a mental abnormality or personality disorder such that they are highly likely to continue to commit sexually violent offenses").

At Velez-Pacheco's SVP hearing, the Commonwealth presented the testimony of Dr. Stein, a licensed psychologist and the member of the SOAB who conducted Velez-Pacheco's court-ordered assessment. *See* N.T., 1/25/2023, at 5-17. Dr. Stein testified that he reviewed the fifteen factors set forth in section 9799.24(b) in his assessment of Velez-Pacheco. *Id.* at 8. When the Commonwealth asked Dr. Stein whether Velez-Pacheco had a mental abnormality that made him likely to reoffend and whether he had engaged in predatory behavior, Dr. Stein explained:

> A.     … He suffers from other specified paraphilic disorder with the specification being non-consent, meaning they sustained non-consenting … sexual conduct that victimizes another person. In this case, it was over an approximate two-year period.
>
> Q.     Can you explain of the 15 different points that you accessed and the information you had in this case, what information leads

- 18 -

you to believe that he does suffer from that other specified paraphilic disorder of non-consent?

A.    The main issues were the acts themselves.  These were hands-on acts.  These were acts of sexual touching that included penetration.  The relationship of the individual to the victim.  The victim was a biological daughter.  This is consistent with sexual deviance and paraphilic, which is another way of saying sexually deviant behavior.

In terms of the mental capacity of the victim, while the victim is of normal capacity, she was asleep during the initiation of some of the assaults, unable to defend herself, and this is consistent with predatory behavior.

The victim's age.  She was 10 when acts first started by her report.  They had stopped for a while and started up again at age 11 and continued through age 13.

The diagnosis of a paraphilic disorder is typically made if there's sexually deviant and victimizing behaviors over at least six months or more.  In this case, it was two years.

So those were the primary issues, the young age of the victim, the acts themselves, and the duration of which they occurred.

Q.    This mental abnormality, the paraphilic disorder that he meets the criteria of, is it a curable condition?

A.    No.  It is manageable with successful treatment but not curable.  One of the purposes of the SVP classification is to hopefully ensure that the individual does not have access to unsupervised situations with children and to maintain long-term treatment to make sure that they don't put themselves in risky situations with children.

*Id.* at 8-10.  Dr. Stein concluded that "[g]iven his lengthy course of offending over a two-year period, possibly more, there is sufficient evidence for a condition of paraphilic disorder that makes sexual reoffending likely if given unsupervised access to young girls." *Id.* at 10.

Based upon our review of the record, in the light most favorable to the Commonwealth, we conclude that the evidence was sufficient to sustain Velez-Pacheco SVP designation. The record reflects that Velez-Pacheco was convicted of multiple sexually violent offenses and that he underwent an assessment by the SOAB. At the SVP hearing, Dr. Stein clearly and thoroughly explained that Velez-Pacheco suffered from a mental abnormality (specified paraphilic disorder with the specification being non-consent), that he engaged in predatory behavior, and that his condition made him likely to reoffend. ***Id.*** at 8-10. Accordingly, because the Commonwealth presented clear and convincing evidence that Velez-Pacheco met the statutory criteria to be classified as an SVP, his third issue entitles him to no relief. ***See Aumick***, 297 A.3d at 777-79.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/07/2024

- 20 -