J-S38040-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DENNIS JAMES CORBY, JR. | : | |
| | : | |
| Appellant | : | No. 2979 EDA 2023 |

Appeal from the Judgment of Sentence Entered June 26, 2023
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-003285-2022

BEFORE: STABILE, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED NOVEMBER 27, 2024**

Appellant, Dennis J. Corby, Jr., appeals from the judgment of sentence entered in the Court of Common Pleas of Lehigh County after he pleaded guilty to charges of Aggravated Indecent Assault and Indecent Assault filed against him for actions he committed while working as a caregiver for adults with intellectual disabilities. Herein, he challenges the sufficiency of the evidence relied upon by the trial court to determine that he is a sexually violent predator ("SVP"). After careful consideration, we affirm.

The trial court sets forth the relevant procedural history and facts, as follows:

> The appellant [(hereinafter, "Appellant")], who was employed as caregiver for a provider of services to people with intellectual disabilities, sexually assaulted [patients] N.L. and A.D., both adults. Both victims, who described themselves as boyfriend and

_____

[*] Former Justice specially assigned to the Superior Court.

girlfriend, have intellectual disabilities.[fn3] The sexual assaults by the defendant took place on multiple occasions in the home of A.D. the assaults were eventually reported by A.D.

> [Fn3 in TCO]    N.L. was described as having an I.Q. of "about 52," and A.D. had an I.Q. in the "low 60's"  Notes of Testimony, SVP and Sentencing Hearing (hereinafter, "N.T. SVP"), 6/26/23, at pp. 48-49.

A Presentence Report was ordered, as well as a Sexually Violent Predator Assessment (hereinafter Assessment).  The Assessment concluded that Appellant met the criteria to be classified as a sexually violent predator, and a hearing (hereinafter "SVP hearing") on that issue, as well as Appellant's sentencing, was held on June 26, 2023.  Dr. Veronique Valliere, a licensed psychologist and a member of the Sexual Offenders Assessment Board since 1979, testified as an expert at that hearing.  Her qualifications were not challenged, only her opinions.  Dr. Valliere prepared the Assessment,[fn4] and her testimony and report were the only evidence introduced at the SVP hearing.  Appellant did not cooperate with the Assessment.

> [Fn4]  The Assessment was admitted into evidence by stipulation.

It was [Dr. Valliere's] opinion to a reasonable degree of psychological certainty, that Appellant's "mental abnormality, which is [a] paraphilic disorder, as we as [his] history of predatory behavior, qualified him for the [sexually violent predator] classification." [fn5]   Specifically, she found that he met the "diagnostic criteria for other specified paraphilic disorder to nonconsent," which is a mental abnormality. [fn6]  His disorder was identified by Dr. Valliere as a "lifetime disorder" which "must be managed over a lifetime and cannot be cured." [fn7]  Additionally, Appellant has a "disorder related to a likelihood of re-offense." [fn8]

> [Fn5]  N.T. SVP at p. 16.

[Fn6] *Id.* at 12.
[Fn7] Assessment at p. 5.
[Fn8] *Id*. *See also* N.T.SVP at p. 17.

---

Dr. Valliere also found that Appellant's conduct "predatory" in that he "initiated and maintained a secretive, threatening, exploitative relationship with the victims in order to victimize them." [fn9] His employment also gave him access o victims who were disabled. It was her opinion that "his selection of disabled victims is particular to [Appellant's] diagnosis. . . . [H]is life was surrounded by potential victims. If he was stimulated by that type of individual and their vulnerability, he was probably stimulated all the time at work." [fn 10]

---

[Fn9] N.T.SVP at p. 14.
[Fn10] N.T.SVP at p. 15.

---

Appellant, at the conclusion of the SVP hearing, was found by clear and convincing evidence to be a sexually violent predator. [Afterward], a sentencing hearing was held. Pursuant to a "fixed" plea agreement, Appellant was sentenced to not less than two (2) years nor more than four (4) years on the aggravated indecent assault charges. He then received a consecutive period of four (4) years['] probation on the indecent assault charge.

Counsel filed a "Post-Sentence Motion" on July 6, 2023, divided into two parts: (1) Motion to Vacate and/or Reconsider SVP Determination;" and (2) "Motion to Stay Sexual Offender Registration." On October 23, 2023, the post-sentence motion challenging the SVP determination was denied. The stay request was granted.

A Notice of Appeal was filed on November 20, 2023, and pursuant to [the trial court's] directive, counsel filed a "Concise Statement of the Errors Complained of on Appeal" (hereinafter "Concise Statement") on December 8, 2023. It is alleged in the Concise Statement, for a variety of reasons, that the Commonwealth did not prove by clear and convincing evidence that Appellant was a sexually violent predator.[fn 11]

- 3 -

Trial Court Opinion, 1/9/24, at 1-3.

Appellant raises one question for this Court's consideration:

Whether the lower court erred in classifying the Appellant as a sexually violent predator when the Commonwealth failed to provide the clear and convincing evidence necessary for such a classification as per title 42 Pa.C.S.A. § 9799.24 and, specifically, whether the [Appellant] has any mental illness, mental disability, or mental abnormality or the likelihood to reoffend?

Brief for Appellant, at 4. Our standard of review of this issue is as follows:

A challenge to a trial court's SVP designation presents a challenge to the sufficiency of the evidence for which our standard of review is *de novo* and our scope of review is plenary. A challenge to the sufficiency of the evidence to support an SVP designation requires the reviewing court to accept the undiminished record of the case in the light most favorable to the Commonwealth. The reviewing court must examine all of the Commonwealth's evidence without consideration of its admissibility.

*Commonwealth v. Aumick*, 297 A.3d 770, 776 (Pa. Super. 2023) (*en banc*) (citations and footnote omitted).

"We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied." *Id.* at 776-77 (citation omitted). "The clear and convincing standard requires evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue."

*Commonwealth v. Meals*, 912 A.2d 213, 219 (Pa. 2006) (citation, internal quotation marks, and brackets omitted).

This Court has explained the SVP determination process as follows:

> [An SVP] is defined as a person who has been convicted of a sexually violent offense ... and who [has] a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses. In order to show that the offender suffers from a mental abnormality or personality disorder, the evidence must show that the defendant suffers from a congenital or acquired condition that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons. Moreover, there must be a showing that the defendant's conduct was predatory. ... Furthermore, in reaching a determination, we must examine the driving force behind the commission of these acts, as well as looking at the offender's propensity to reoffend, an opinion about which the Commonwealth's expert is required to opine. However, the risk of re-offending is but one factor to be considered when making an assessment; it is not an independent element.

*Commonwealth v. Hollingshead*, 111 A.3d 186, 189-190 (Pa. Super. 2015) (cleaned up). We have also recited the pertinent factors that a mental health professional must consider when performing an SVP assessment:

> whether the instant offense involved multiple victims; whether the defendant exceeded the means necessary to achieve the offense; the nature of the sexual contact with the victim(s); the defendant's relationship with the victim(s); the victim(s)' age(s); whether the instant offense included a display of unusual cruelty by the defendant during the commission of the offense; the victim(s)' mental capacity(ies); the defendant's prior criminal record;

whether the defendant completed any prior sentence(s); whether the defendant participated in available programs for sexual offenders; the defendant's age; the defendant's use of illegal drugs; whether the defendant suffers from a mental illness, mental disability, or mental abnormality; behavioral characteristics that contribute to the defendant's conduct; and any other factor reasonably related to the defendant's risk of reoffending.

*Id*. at 190 (cleaned up).

***Commonwealth v. Birney***, 311 A.3d 575 (non-precedential decision) (Pa. Super. 2023).[1]  ***See*** 42 Pa.C.S.A. § 9799.24(b).  After the assessment is complete, the mental health professional submits a written report to the assigned district attorney who may request a hearing on the matter.  ***See*** 42 Pa.C.S.A. § 9799.24(d), (e)(1).

In Appellant's brief, he contends the Commonwealth's medical expert, Dr. Valliere, improperly relied exclusively on hearsay to form her expert medical opinion that Appellant was an SVP.  While Dr. Valliere testified that Appellant met the diagnostic criteria for possessing a lifetime mental abnormality, namely, paraphilic disorder, and that such a lifetime disorder would contribute to the likelihood of his recidivism, Appellant challenges the sufficiency of Dr. Valliere's testimony on the discrete basis that she never

---

[1] Under Pa.R.A.P. 126(b), we may cite and rely on non-precedential decisions filed after May 1, 2019, for their persuasive value.

made an in-person assessment of him[2] but, instead, referenced third-party documents of record that he maintains were inadequate to her task:

> The determination of [Appellant's] status by Dr. Valliere was based upon her evaluation of materials that were neither designed or [sic] purposed to evaluate an individual's psychological portrait. She looked at materials whose prime purpose was to assist in the prosecution of [Appellant] or was simply background information regarding [Appellant's] history and employment background. She looked at the probable cause affidavit for this prosecution and much of the information derived from the police investigation regarding [Appellant's] involvement. None would provide any pertinent information regarding [Appellant's] mental, emotional and psychological status. This is critically important as the evaluation and final determination is based upon the evaluators [sic] ability to get into the psychology of [Appellant] and to be able to reliably determine if there is a likelihood of future predatory behavior. This is especially true when the supporting evidence comes from reports or evaluation[s] whose purpose is to prosecute not evaluate the individual.
>
> [Appellant], as in any sexually violent predator evaluation, had the right to refuse to participate. However, that refusal should not be a basis to allow the decision on the final determination to be made based on evidence and reports not designed for the purpose that they are used in this Megan's Law determination.

Brief of Appellant, at 11-12.

Our Court has rejected this very argument against reliance on Commonwealth documents alone to inform an expert SVP opinion. In *Aumick*, the defendant pleaded guilty to third-degree felony and Tier I offense corruption of minors. At the SVP hearing, the mental health expert testified that she did not interview the defendant in-person but based her SVP opinion

_____

[2] Appellant exercised his right to refuse an interview with a SOAB mental health expert as part of the SVP determination process.

on, "*inter alia*, the affidavit of probable cause, criminal information, criminal complaint, preliminary hearing transcript, and investigative reports prepared by Child Protective Services. *Id.* at 9. On appeal, the defendant argued that the SVP expert relied solely upon Commonwealth-provided documents, which defendant maintained were inadmissible hearsay. *Id*. at 776.

In affirming judgment of sentence, our Court reasoned that SOAB members would strain to fulfill their legislative obligations "if their SVP assessments and written reports were limited to facts contained in a plea colloquy, admitted into evidence, or determined by the trier of fact." *Id.* at 782. Furthermore, we observed there was no hearsay issue because the facts presented at an SVP hearing are not substantive evidence offered for the truth of the matter asserted but are, instead, "information, gleaned from records which are reasonably relied on in SOAB evaluations, that is presented to the trial court solely to supply the basis for the expert's opinion in accordance with our Rules of Evidence." *Id*.

Similarly, in *Birney*, the defendant, who pleaded guilty to two counts of possession of child pornography, argued on appeal that the SVP determination made against him relied exclusively on hearsay evidence. In its decision to affirm, the panel majority[3] relied on the *en banc* decision in *Aumick* that a

---

[3] Judge Pelligrini authored a concurring memorandum to express his disagreement with the controlling, *en banc* *Aumick* decision that a SOAB expert may reach an SVP opinion solely based on inadmissible hearsay in collateral third-party documents.

SOAB member may rely solely on hearsay documentation to reach an SVP opinion.

**Birney**, moreover, found persuasive this Court's non-precedential decision in **Commonwealth v. Waldo**, 303 A.3d 744 (non-precedential decision) (Pa. Super. filed July 10, 2023), in which the defendant argued that the SVP assessor used inadmissible hearsay evidence such as, *inter alia*, police reports, probation records, and Pennsylvania Department of Corrections records in formulating his determination that Waldo was an SVP. The **Waldo** panel relied on **Aumick** to hold that the SVP expert "was permitted to consider this evidence in rendering his opinion as to whether Waldo should be classified as an SVP." **Id.** at *5.

The case *sub judice* falls squarely under the decisional law expressed in **Aumick** and relied upon in the persuasive non-precedential decisions in **Birney** and **Waldo**. Dr. Valliere testified at the SVP hearing that, in her expert opinion, Appellant possessed an acquired or congenital condition that overrides his volitional control, is related to a likelihood of re-offense, and serves as the impetus for the sexually violent behavior he exhibited in this case. N.T., 6/26/23, at 11. Evidence in his current offense, moreover, revealed to Dr. Valliere that Appellant exhibited predatory behavior through his establishment of a relationship that was initiated, maintained, or promoted in whole or in part for the purpose of facilitating victimization. **Id.** On this basis, Dr. Valliere opined that Appellant possessed a mental abnormality— paraphilic disorder to nonconsent, which is characterized by patterns of

deviant sexual arousal that cause disruption in an individual's life or creates the victimization of others. N.T. at 12-16.

Just as the SOAB mental health expert witnesses did in **Aumick**, **Waldo**, and **Birney**[4], Dr. Valliere arrived at her opinion by reviewing all the evidence made available to her, including the affidavit of probable cause, the docket information and investigation report by the board investigator, employment details of Appellant, the trial judge's court order, a letter from Appellant's attorney at the time indicating that Appellant would not participate in an SVP interview, the criminal complaint, the transcript of the guilty plea hearing, and the police reports involved. N.T. at 12. As no substantive difference exists between the present record relied upon by Dr. Valliere and the records relied upon in the referenced decisions, Appellant's appeal merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/27/2024

---

[4] Notably, Dr. Valliere was the mental health expert in **Birney**.