J-S01038-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TAAHIR SHYMIR STOWE | : | |
| | : | |
| Appellant | : | No. 950 MDA 2024 |

Appeal from the Judgment of Sentence Entered June 12, 2024
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0000288-2023

BEFORE:   NICHOLS, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:      **FILED: FEBRUARY 6, 2025**

Appellant, Taahir Shymir Stowe, appeals from the judgment of sentence entered in the Court of Common Pleas of Lycoming County following his counseled guilty plea to one count of dissemination of child pornography, 18 Pa.C.S.A. § 6312(c).  After a careful review, we affirm.

The relevant facts and procedural history are as follows: Appellant was charged with numerous crimes in connection with the online dissemination of nude photographs of a thirteen-year-old girl. On September 11, 2023, Appellant, who was represented by counsel, entered a guilty plea to one count of dissemination of child pornography graded as a third-degree felony. The trial court scheduled a sentencing hearing, ordered a presentence

_____

[*] Former Justice specially assigned to the Superior Court.

investigation report ("PSI report"), and directed that Appellant undergo an assessment by the Sexual Offenders Assessment Board ("SOAB").

On June 4, 2024, the trial court conducted a hearing for sentencing and to determine whether Appellant was a sexually violent predator ("SVP"). At the hearing, the Commonwealth presented the expert testimony of a licensed psychologist, C. Townsend Velkoff, who has been a member of the SOAB since 1996. N.T., 6/4/24, at 3. Mr. Velkoff indicated his role is to evaluate sex offenders to determine if they are SVPs, and he has conducted "somewhere in the range of four or five hundred" assessments for this purpose during his career. *Id.* at 3-4. Mr. Velkoff confirmed he evaluated Appellant to determine if he is an SVP. *Id.* at 4.

Specifically, Mr. Velkoff indicated that, as documented in a report he submitted on November 9, 2023, he received information from a SOAB investigator. *Id.* at 5. This information included the trial court's orders, defense attorney's responses, the state police incident report, the criminal complaint, the Information, the affidavit of probable cause, the guilty plea colloquy, and the Lycoming County PSI report. *Id.* Appellant declined to participate in the evaluation. *Id.*

Mr. Velkoff indicated he examined this information "carefully" in conjunction with the statutory factors, which cover the parameters of the offense and issues related to making an SVP determination. *Id.* at 6. He noted Appellant was found in possession of multiple nude images of the

thirteen-year-old victim. *Id.* at 7. He further noted the relationship between Appellant and the victim was important in that the victim knew Appellant. *Id.* Mr. Velkoff noted that, when Appellant met the thirteen-year-old victim, he misrepresented his age. *Id.* Specifically, Appellant falsely told her that he was fifteen or sixteen years old when he was actually seventeen or eighteen years old at the time. *Id.* at 7-8.

Mr. Velkoff indicated Appellant's prior criminal history was important in determining whether he is an SVP. *Id.* at 8. In this vein, he testified Appellant was first arrested when he was eleven years old for possession of a weapon, providing false identification to law enforcement, and simple assault. Appellant was adjudicated delinquent. "He ended up being placed in residential treatment beginning when he was 11 and continued until he was 18 where he maxed out of—from the juvenile system." *Id.* "And then he had criminal offenses as an adult, the first one being when he was 19…[and arrested] for simple assault[.]" *Id.* At twenty years old, Appellant was arrested for contempt because he violated a protection from abuse order, and at twenty-one years old, he was arrested for burglary, as well as possession of a weapon. *Id.*

Mr. Velkoff noted that, as it relates to the instant victim, in addition to disseminating the nude images of the victim, Appellant attempted to intimidate the victim. *Id.* at 10. Appellant made "a video of himself outside of the school and threatened her[.]" *Id.* at 9. In this video, while he made

threats against the victim, Appellant displayed a handgun. *Id.* at 20. Mr. Velkoff concluded Appellant's criminal history was indicative of someone who would continue to engage in violence and criminal activity. *Id.*

Mr. Velkoff opined that, given Appellant's criminal history, and particularly that his criminal activities began when he was just eleven years old, Appellant meets the diagnostic criteria for antisocial personality disorder. *Id.* at 8-9. Mr. Velkoff further opined Appellant's predatory behavior and possession of child pornography was consistent with someone who sought to gratify his own needs without regard to others. *Id.* at 10. Ultimately, Mr. Velkoff concluded Appellant meets "the criteria for…the definition of sexually violent predator based on his antisocial personality characteristics." *Id.*

On cross-examination, Mr. Velkoff reiterated that, based on his examination of the information provided to him, Appellant's "behavior amounts to characteristics of antisocial personality disorder." *Id.* at 11. On redirect examination, Mr. Velkoff testified that one of the criteria for diagnosing a person with antisocial personality disorder is whether the individual displays problems of conduct before the age of fifteen. *Id.* at 12. Mr. Velkoff reiterated that Appellant's criminal behavior began when he was eleven years old, and his criminal behavior continued throughout his juvenile years and into his adult years. *Id.*

The Commonwealth rested its case, and the defense presented the expert testimony of Frank M. Dattilio, PhD, a board-certified forensic

psychologist. Similar to Mr. Velkoff, Dr. Dattilio is an expert in the field of sexual offender assessment. *Id.* at 14.

Dr. Dattilio indicated he reviewed several documents, including the police criminal complaint, the affidavit of probable cause, the SVP assessment performed by Mr. Velkoff of the SOAB, the discovery packet pertaining to Appellant's terroristic threat offense in 2023, Lycoming County prison records, Lycoming County Juvenile Probation records, and the order placing Appellant at Northwest Academy in 2014. *Id.* at 15.

Additionally, Dr. Dattilio interviewed Appellant. *Id.* at 16. Specifically, he spent "an entire day with him at the Luzerne County Prison where he was at that time housed" on March 28, 2024.[1] *Id.* Dr. Dattilio conducted a series of psychological tests, including the Mini-Mental State Examination-2, the Millon Clinical Multiaxial Inventory-IV, the Mood Disorder Questionnaire, the Miller Forensic Assessment of Symptoms, the Aggression Questionnaire, the Hare Psychopathy Checklist-Revised, and the Sexually Violent Risk-20V2 coding sheet. *Id.*

Dr. Dattilio reviewed Appellant's background and discovered he was "exposed to some early traumas in Philadelphia when he lived there until age 6½." *Id.* Dr. Dattilio noted Appellant was exposed to his maternal grandmother being shot and killed on the street; his mother was an illicit crack

_____

[1] Appellant was an inmate at the Luzerne County prison on March 28, 2024, for offenses unrelated to the instant criminal matter.

abuser; and he had a difficult early childhood. *Id.* After the shooting death of his maternal grandmother, Appellant and his mother relocated to Williamsport, Pennsylvania; however, his mother eventually left, and Appellant was placed with his maternal aunt in Williamsport. *Id.* at 17. At this point, Appellant began to exhibit behavioral problems. *Id.*

Dr. Dattilio indicated Appellant was diagnosed with attention deficit/hyperactivity disorder, and as a result, he was medicated with a psychostimulant compound. *Id.* Appellant began to "become involved in some antisocial behaviors early on after the age of 11, and [he] was eventually put into placement." *Id.* Dr. Dattilio indicated "there's a litany of placements that he was transferred to throughout the course of several years[.]" *Id.* Appellant eventually went back to live with his maternal aunt, where he remained until his mother came back into his life. *Id.* Appellant was then involved in "some additional antisocial acts for which he remained on juvenile probation up until the age of 18 when he was released." *Id.* During his juvenile years, Appellant was in various detention facilities. *Id.* He then became involved with the instant offense regarding the victim. *Id.*

Dr. Dattilio indicated he reviewed the statutory factors relevant to determining whether Appellant is an SVP. *Id.* at 18. He testified he agrees with Mr. Velkoff that Appellant meets the statutory criteria for predatory behavior; however, he disagrees that Appellant meets the criteria for antisocial personality disorder. *Id.* Dr. Dattilio recognized that, although

Appellant has "a history of antisocial behavior starting at a young age, he was not diagnosed with a conduct disorder until after the age of 16, which is required in any diagnosis for antisocial personality disorder." *Id.* at 18-19.

Further, he noted that, on the Hare Psychopathy Checklist-Revised, Appellant scored only a 17, and typically an SVP is a 30. *Id.* at 19. He concluded Appellant did not meet the diagnostic criteria for an SVP according to the Millon Clinical Multiaxial Inventory-IV assessment, which he administered to Appellant. *Id.* While the assessment demonstrated Appellant has "antisocial traits and patterns[, it did not demonstrate] full diagnostic criteria for the personality disorder." *Id.* Thus, contrary to Mr. Velkoff, Dr. Dattilio opined Appellant does not meet the diagnostic criteria for antisocial personality disorder. *Id.*

Dr. Dattilio admitted Appellant "certainly has engaged in antisocial behaviors, but it's not ingrained in the level as we find with a full-blown antisocial personality disorder[.]" *Id.* He emphasized Appellant "was not issued the diagnostic criteria for conduct disorder until after the age of 16." *Id.*

Dr. Dattilio admitted Appellant is at risk for future criminal behavior; however, he opined "he's a low risk for sexual behaviors." *Id.* at 20. He opined Appellant "does not have a mental abnormality according to the Statutory criteria[.]" *Id.* He concluded Appellant meets "the criteria for

predatory behavior, because his acts were predatory, but it—it falls short of him meeting the designation for sexually violent predator." *Id.*

On cross-examination, Dr. Dattilio admitted Appellant engaged in antisocial behavior prior to the age of sixteen; however, he opined Appellant's behavior did not rise to the level of a "full-blown disorder" until after he turned sixteen years old. *Id.* at 21. He indicated that, since the "diagnostic criteria under antisocial personality disorder clearly indicates that the individual [must] have a conduct disorder with onset before the age of 15 years, and that was not…designated" with Appellant, Appellant does not meet the criteria for having an antisocial personality disorder. *Id.*

Dr. Dattilio opined Appellant's acts in the instant matter were "limited sexual acts, it was a non-contact offense, [and] it involved pictures." *Id.* Dr. Dattilio recognized Appellant "has a lengthy criminal history, [and] he certainly has antisocial behavior[.]" *Id.* However, he opined Appellant falls short of the criteria for being designated an SVP. *Id.*

At the conclusion of the hearing, the trial court held Appellant meets the criteria as an SVP. *Id.* at 24. Specifically, the trial court found the Commonwealth proved Appellant has an antisocial personality disorder. *Id.* The trial court further found the onset of the antisocial personality disorder occurred prior to the age of fifteen as demonstrated by Appellant's juvenile criminal history. *Id.* Specifically, Appellant began committing crimes as a juvenile at the age of eleven years old. *Id.*

The trial court then indicated it was turning to the matter of sentencing. The trial court acknowledged the parties' plea agreement stipulated to a period of probation. Defense counsel argued for a period of four years' probation. The trial court indicated it considered the PSI report and asked if Appellant would like to make a statement. *Id.* at 28. Appellant declined. *Id.* The trial court imposed a sentence of six years' probation. *Id.* at 29.

The trial court entered a written sentencing order on June 7, 2024; however, on June 12, 2024, the trial court *sua sponte* entered an amended sentencing order to include its finding that Appellant is an SVP. Appellant was provided with notice of his SVP classification, as well as his reporting, registration, and counseling requirements under the Sexual Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. §§ 9799.10 *et seq*.

Appellant did not file a post-sentence motion; however, on June 28, 2024, he filed a timely counseled notice of appeal. On that same day, counsel filed a Pa.R.A.P. 1925(b) statement, and on August 19, 2024, the trial court filed a Rule 1925(a) opinion.

On appeal, Appellant presents the following sole issue in his "Statement of the Questions Involved" (verbatim):

> Whether the sentencing court erred in determining that the Appellant is a sexually violent predator because the Commonwealth failed to prove by clear and convincing evidence that he is a sexually violent predator.

Appellant's Brief at 4 (suggested answer omitted).

On appeal, Appellant challenges the sufficiency of the evidence supporting his SVP designation. Specifically, Appellant contends the Commonwealth failed to prove by clear and convincing evidence that Appellant suffers from any mental abnormality or personality disorder, which makes him likely to engage in future predatory behavior. Appellant's Brief at 11.

Whether the evidence was sufficient to support the SVP designation presents a question of law, for which our standard of review is *de novo*, and our scope of review is plenary. **See Commonwealth v. Meals**, 590 Pa. 110, 912 A.2d 213, 218 (2006); **Commonwealth v. Aumick**, 297 A.3d 770, 776 (Pa.Super. 2023) (*en banc*).

> In order to affirm [a trial court's] SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is an [SVP]. As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth[, as the prevailing party on this issue]. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

**Commonwealth v. Fuentes**, 991 A.2d 935, 941-942 (Pa.Super. 2010) (*en banc*) (citation omitted). The clear and convincing standard governing a determination of SVP status "requires evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." **Meals**, **supra**, 912 A.2d at 219 (citation, original quotation marks, and original brackets omitted).

A "sexually violent predator" is statutorily defined as "a person who has been convicted of a sexually violent offense and who is determined to be a sexually violent predator under section 9799.58 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses[.]" 42 Pa.C.S.A. § 9799.53 (definitions). The evidence must also show the defendant's conduct was predatory. "Predatory" is statutorily defined as "an act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." *Id.*

SOAB evaluators must consider the following factors when performing SVP assessments:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age of the individual.

(ii) Use of illegal drugs by the individual.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9799.58(b).

Here, the trial court evaluated Appellant's sufficiency issue on appeal as follows:

The [SVP] hearing took place on June 4, 2024, with [Mr.] Velkoff of the SOAB testifying on behalf of the Commonwealth and Dr. Dattilio testifying on behalf of [Appellant]. After the testimony of the experts and the arguments of counsel, the [trial] court found that Appellant met the criteria of a sexually violent predator.

\*\*\*

Both the expert for the Commonwealth and the expert for Appellant agreed that Appellant met the criteria for the "predatory behavior" prong of the SVP designation. Additionally, both experts agreed that Appellant did not display any of the characteristics associated with the known paraphilic disorders and, as a result, did not display the mental abnormality aspect of the congenital or…acquired condition prong of the SVP designation. Where the two experts differed in their opinions, and the ultimate deciding factor for the [trial] court,…is whether Appellant met the personality disorder aspect of the congenital or acquired condition.

[Mr.] Velkoff, in his report and his testimony at the hearing, opined that, given [Appellant's] lengthy criminal history, which began when he was 11 years old and has continued into adulthood, Appellant…display[ed] characteristics of antisocial personality disorder and therefore met the Personality Disorder

- 12 -

aspect of the definition of Sexually Violent Predator. Mr. Velkoff testified specifically, "[p]art of the definition—or the diagnostic criteria for antisocial personality disorder is that the individual needs to display problems of conduct before the age of 15, and since his misconducts began when he was 11, that met the criteria." [N.T., 6/4/24, at 9.] Dr. Dattilio disagreed, testifying that "while he has a history of antisocial behavior starting at a young age, he was not diagnosed with a conduct disorder until after the age of 16, which is required in any diagnosis for antisocial personality disorder." *Id.* at 19.

After careful consideration of the reports and testimony of both experts, the [trial] court found that Appellant met the statutory criteria under both the personality disorder and predatory behavior to be classified as a Sexually Violent Predator. As there was not [*sic*] dispute that the onset of Appellant's criminal conduct started well before the age of 15, and Appellant's expert testified that Appellant was exposed to multiple traumas as a child and adolescent, which led to several different placements and living instability, the fact that Appellant was not officially diagnosed with a conduct disorder until after the age of 16 was neither surprising to the [trial] court nor determinative of whether Appellant met the Personality Disorder aspect of the definition of Sexually Violent Predator.

Trial Court Opinion, filed 8/18/24, at 1-4.

We agree with the trial court's sound reasoning. Here, the SOAB evaluator, Mr. Velkoff, testified at the SVP hearing that he considered the statutory factors outlined in Section 9799.58(b). He concluded Appellant met the diagnostic criteria for antisocial personality disorder, and this disorder makes it likely Appellant will reoffend. In support thereof, Mr. Velkoff noted that one of the criteria for diagnosing a person with antisocial personality disorder is whether the individual displayed problems with conduct before the age of fifteen. Here, Appellant's criminal history began at the age of eleven, and since that time, he has had multiple arrests into adulthood. He concluded

that, in line with Appellant's antisocial personality disorder, Appellant is likely to reoffend and engage in criminal activities to gratify himself without regard to others.

Contrary to Appellant's claim, we conclude Mr. Velkoff's testimony establishes that Appellant has a personality disorder, *i.e.*, antisocial personality disorder, which makes it likely that he will reoffend. Further, Mr. Velkoff's testimony establishes that Appellant's actions were predatory in nature. Specifically, he testified that, in establishing a relationship with the thirteen-year-old victim, Appellant lied about his age. Also, he intimidated and threatened the victim. Thus, contrary to Appellant's suggestion, we conclude the evidence sufficiently establishes the predatory nature of Appellant's actions.

As is evident, the trial court credited the testimony of Mr. Velkoff. Based thereon, the trial court concluded Appellant suffers from a personality disorder, which makes him likely to reoffend, and his conduct was predatory. *Fuentes*, *supra* (holding SOAB expert's opinion the individual has an abnormality or personality disorder indicating the likelihood of predatory sexual violent offenses is itself evidence). Credibility determinations are for the trial court, and to the extent Appellant requests we re-weigh the evidence, we decline to do so. *Id.* (holding appellate courts do not weigh the evidence presented to the trial court and do not make credibility determinations as it relates to SVP determinations).

Viewing the evidence in the light most favorable to the Commonwealth, the trial court correctly determined the Commonwealth presented clear and convincing evidence to support Appellant's classification as an SVP. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/6/2025